**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 14-30054 |
| Barrington Spring House, LLC | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Walter |

**MOTION BY DEBTOR FOR AN ORDER (1) AUTHORIZING THE INTERIM USE OF
CASH COLLATERAL REGARDING THE UNPERFECTED SECURITY INTERESTS
OF (A) RAFAEL, ISAAC KEITH AND LIMOR MAWARDI AND (B) HIGHGATE
ROAD PTY, LTD.; (2) AUTHORIZING THE CONTINUING USE OF CASH
COLLATERAL; AND (3) GRANTING ADEQUATE PROTECTION**

Barrington Spring House, LLC, the Debtor and Debtor in Possession (the "Debtor"),

moves the Court (the "Motion"), without waiving its right to contest the validity of any alleged

security interest, pursuant to 11 U.S.C. §§ 361, 362, 363, and 507(b); Rules 2002, 4001 and 9014

of the Federal Rules of Bankruptcy Procedure; and Local Bankruptcy Rule 4001-2 for an Order:

1.      authorizing the Debtor to use cash collateral on an interim basis regarding the

unperfected mortgage security interests (the "Unperfected Security Interests") held by (a) Rafael,

Isaac Keith and Limor Mawardi (the "Mawardis) and (b) Highgate Road Pty, Ltd. ("Highgate")

in the Debtor's real estate and the rents derived therefrom (the "Collateral");

2.       authorizing the Debtor, after expiration of the interim and notice period without

objection, to use cash collateral on a continuing basis regarding the Unperfected Security

Interests; and

3.       granting adequate protection to the Mawardis and to Highgate regarding their

Unperfected Security Interests.

The Debtor requests that the authority to use cash collateral and the grant of adequate

protection regarding the Unperfected Security Interests be authorized upon the following terms

and conditions:

1

1.      The Debtor requests authority to use the cash collateral for the following

purposes:

A.      The payment of normal ordinary course post-petition operating expenses

of the Debtor;

B.      The payment of any pre-petition obligation of the Debtor or any non-

ordinary course of business obligation of the Debtor approved by the Bankruptcy Court

after proper notice and opportunity for a hearing;

C.      Any Court-authorized fees or expenses of the Debtor's professionals; and

D.      To the extent there are any net rents, the Debtor will hold those funds to be

used to maintain the property pending further Order of the Court.

2.      During the interim period before the final approval of this Motion, the Debtor

requests authority to use cash collateral for the purposes set forth herein. Attached as Exhibit B is

the "Cash Flow Projection" of the Debtor that was prepared in conjunction with this case.[1] The

Debtor proposes that, during the interim period, it be permitted to use Cash Collateral for those

expenses set forth and in the approximate amounts shown on the Cash Flow Projection. The

Debtor does not anticipate any net rents. To the extent there are any net rents, the Debtor will

hold those funds to be used to maintain the property pending further Order of the Court.

3.      The Debtor further request that the Court order that the following terms and

provisions will constitute adequate protection to the Mawardis and to Highgate regarding their

respective Security Interests:

A.      The Debtor will maintain the property and, without waiving any right to

contest the Security Interest of either the Mawardis or Highgate, andwill offer a

---

[1] The Cash Flow Projection indicates a negative monthly cash flow. The Debtor is in the process of negotiating post-petition DIP financing and will file the appropriate motions in relation to the financing as soon as possible.

replacement lien on the assets to each party to the full extent of the value, if any, of each party's respective Security Interest at the commencement of the case.

B.      The Debtor will provide the Mawardis and Highgate with a copy of all financial reports provided to the U.S. Trustee, the Bankruptcy Court or any other parties in interest.

C.      Through its continuous operation, the Debtor will preserve and maintain the value of the property, thereby adequately protecting the use of the cash collateral used herein.

4.      The Debtor further requests that the provisions of the Order authorizing this Motion be effective until further Order of the Court.

5.      The Debtor further requests that the provisions of the Order granting this Motion may be terminated only upon any of the following events (the "Events of Default"):

A.      The Debtor uses cash collateral for expenditures not approved by the Order granting this Motion or otherwise approved by an Order of the Court; or

B.      The Debtor fails to provide the Mawardis or to Highgate with the financial information identified in this Motion; or

C.      An Order is entered by the Bankruptcy Court appointing a Chapter 11 Trustee or converting the Debtor's Chapter 11 case to a Chapter 7 case; or

D.      Upon entry of an Order by the Bankruptcy Court upon good cause shown; provided, however, that the relief provided to the Mawardis and to Highgate hereunder (including the continuation of its lien and related relief) will not be impaired or voided on account of such termination.

6.      If any of the Events of Default occur, the Mawardis and Highgate will provide written notice of the proposed termination of the provisions of the Order granting this Motion and the termination of the authority of the Debtor to use cash collateral in the below manner ("Notice of Default"). In the case of failure to provide payment or properly insure the Collateral, the Debtor will be permitted to cure such default within ten (10) days of the mailing of the Notice of Default.

A.      The Notice of Default will be sent by U.S. Mail to the following parties:

Barrington Spring House, LLC          Office of the U.S. Trustee
C/O Corla Young, Stat. Agent          170 North High Street, Suite 200
4346 Riverside Dr, Ste. D1            Columbus, OH 43215
Dayton, OH 45405

And any Chapter 11 or Chapter 7 trustee appointed by the Court

B.      The Notice of Default will be provided to the following parties by e-mail and by U.S. mail:

James A. Coutinho, Esq.               Ronna Jackson, Esq.
Strip, Hoppers, Leithart, McGrath &   Office of the U.S. Trustee
Terlecky Co., LPA                     170 N. High Street, Suite 200
575 S. Third St.                      Columbus, OH 43215
Columbus, OH 43215                    E-mail: ronna.g.jackson@usdoj.gov
E-mail: jac@columbuslawyer.net

C.      The Notice of Default must also be filed with the Bankruptcy Court through the Court's ECF filing system.

7.      Any interim use of cash collateral by the Debtor during the interim period is authorized by the Court and will not be subject to adjustment, alteration or repayment based upon any objection that may be filed to the provisions of this Motion.

4

8.      The Debtor does not grant either the Mawardis or Highgate a security interest in any avoidance actions that may be pursued pursuant to 11 USC 544, 545, 547, 548, 549, 553(b), 723(a) or 724(a), or any other applicable statute or law or in the proceeds from any avoidance action.

9.      As required by Local Bankruptcy Rule 4001-2(a)(1), attached as Exhibit A and incorporated by reference is Local Bankruptcy Rule Form 4001-2 which sets forth the provisions that are subject to the request for authority in this Motion. The only provision of note is that this Motion seeks to provide adequate protection to the Mawardis and to Highgate.

10.     The Debtor further requests that the Court order that Counsel for the Debtor will mail notice of the Order granting this Motion within three (3) business days of its entry to the Mawardis, Highgate, the twenty largest unsecured creditors in this case, the Office of the United States Trustee, and those parties requesting notice. The notice will provide that any creditor or party in interest may object to the provisions of the Order granting this Motion within twenty-one (21) days of the mailing of the notice. If any timely objection is filed, the Court will schedule a hearing to consider the objection and to consider possible modification of the provisions of the Order. If no objections are timely filed, counsel for the Debtor will file a report with the Court indicating that there have been no timely objections and the provisions of the Order granting this Motion will become final and the Debtor will be authorized to use cash collateral and to grant adequate protection as set forth in the Motion.

2

A memorandum in support of this Motion follows. As a result of the Debtor seeking an expedited hearing on this matter, no 21-day notice is attached. A proposed order is attached as Exhibit I.

Respectfully submitted,


 /s/  James A. Coutinho
Myron N. Terlecky (0018628)
James A. Coutinho (0082430)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
T: (614) 228-6345     F: (614) 228-6369
mnt@columbuslawyer.net; jac@columbuslawyer.net
Proposed Attorneys to the Debtor

<u>**MEMORANDUM IN SUPPORT**</u>

## I.   JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue of this proceedings is proper under 28 U.S.C. §§1408 and 1409. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2.      The basis for the relief requested herein is 11 U.S.C. §§ 361, 362, 363, and 507(b); Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure; and Local Bankruptcy Rule 4001-2.

## II.   BACKGROUND INFORMATION

3.      On January 8, 2014 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor's assets and principal place of business are located in this District.

5.      No trustee, examiner or statutory committee has been appointed in this case.

6.      The Debtor has been in operation since 2011. It is a single member Ohio Limited Liability Company owned by Geoffrey Walter Edelsten ("Mr. Edelsten").

7.      The Debtor is the owner of RiverView Park Apartments, a 685-unit garden-style community located approximately 3.5 miles north of downtown Dayton, Ohio (the "Apartment Complex"). The Apartment Complex, constructed in the 1960s, is located at 4346 Riverside Drive, Dayton, Ohio 45405. The Apartment Complex consists of sixty buildings containing fifty-nine residential apartment buildings and one clubhouse. It features approximately 200 one-

4

bedroom, 420 two-bedroom and 65 three-bedroom units.

8.      A copy of the deed for the Apartment Complex is attached as Exhibit C.

9.      The Debtor acquired the Apartment Complex in 2011 and has been operating it since. The Apartment Complex has a current occupancy rate of 12%. Certain of the units within the Apartment Complex are in disrepair and may need substantial maintenance to become viable for ongoing leasing opportunities.

10.      Because of issues surrounding the Apartment complex, Harrison Township has determined that certain buildings in the Apartment Complex must be torn down.

11.      The Apartment Complex is allegedly subject to mortgages to (a), Isaac Keith Mawardi, Limor Mawardi, and Rafael Mawardi (the "Mawardi Mortgage") and (b) Highgate Road Pty, Ltd., an Australian company. Additional debts may be owed to taxing authorities and utility companies. The Debtor will investigate whether there are any avoidance claims as to the mortgages.

12.      The Debtor is also the subject of litigation styled *Mawardi, et al., v. Edelsten, et al.*, Case No. 12-025285 in the Circuit Court of the Seventeenth Judicial Circuit for Broward County, Florida (the "Florida Case"). In the Florida Case, certain claims have been raised as to the Debtor, the mortgage and the Apartment Complex.

13.      The Debtor filed this Chapter 11 proceeding in order to reorganize its financial affairs, to preserve the going concern value of its assets, and to provide a substantive and procedural mechanism for the realization of that value, so as to maximize the value of its assets for the benefit of all parties in interest.

14.      Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor in possession.

15.     The Mawardis will allege that they are owed money from the Debtor pursuant to Promissory Note dated September 10, 2013 (the "Mawardi Note"). A copy of the Mawardi Note is attached as Exhibit D.[2]

16.     In conjunction with the Note, on December 30, 2013, the Debtor executed in favor of the Mawardis a mortgage on the Apartment Complex in the amount of the Note. The Mawardi Mortgage was filed with the Montgomery County, Ohio, Recorder on January 6, 2014, as File # 2014-00000734. A copy of the Mawardi Mortgage is attached as Exhibit E.

17.     Highgate is owed money from the Debtor pursuant to a *Mortgage Promissory Note* dated October 16, 2012, in the principal amount of $3,879,000 (the "Highgate Note"). A copy of the Highgate Note is attached as Exhibit F.

18.     In conjunction with the Note, on October 16, 2012, the Debtor executed in favor of Highgate a mortgage on the Apartment Complex in the amount of the Note (the "Highgate Mortgage"). The Highgate Mortgage was filed with the Montgomery County, Ohio, Recorder on October 23, 2012, as File # 2012-00069384. A copy of the Highgate Mortgage is attached as Exhibit G.

19.     Highgate executed a Consent and Subordination agreement on December 31, 2013, that was filed with Montgomery County, Ohio, Recorder on October 23, 2012, as File # 2014-00000735 (the "Subordination Agreement"). A copy of the Subordination Agreement is attached as Exhibit H.

20.     Both the Mawardi Mortgage and the Highgate Mortgage contain an Assignment of Rents clause. The Debtor does not believe that the Assignment of Rents has been perfected as to the Debtor, or that either the Mawardis or Highgate has acted on any right to obtain possession

---

[2] To date, the Debtor has been unable to obtain a signed copy of the Mawardi Note. The copy attached is an unsigned draft that is believed to mimic the final Note.

of the property or to have a receiver appointed[3]. <u>MCM Funding 1997-1, Inc. v. Amware Distrib.</u>
<u>Warehouses M&M, LLC</u>, 2006-Ohio-3326 (Ohio App. 8th Dist. 2006) ("the law in Ohio is that a
mortgagee may collect rents upon the default of the mortgagor only upon taking possession of
the property or upon the appointment of a receiver." citing <u>In re Sam A. Tisci, Inc.</u>, 133 B.R.
857, 859 (N.D. Ohio 1991)

21.     Moreover, there is no Financing Statement filed to secure any interest either the
Mawardis or Highgate may have as to the Debtor's accounts or the rents received from the
Collateral. As such, the Debtor believes that authority to use cash collateral may not be entirely
necessary, but files this motion out of an abundance of caution.

22.     The Debtor is proposing that it provide adequate protection to Mawardis and to
Highgate by using the gross income derived from the Apartment Complex to sustain operations,
which will preserve and maintain the value of the property, thereby adequately protecting the use
of the cash collateral used herein. The Debtor does not anticipate that there will be any net rents.

### III.    BASIS FOR RELIEF

23.     The Debtor seeks authority from this Court in accordance with 11 U.S.C. §
363(c)(2)(A), to use the income generated from the Collateral as well as any other income related
to the Collateral. The Debtor seeks to use cash collateral to fund its post-petition operations.

24.     For the reasons expressed in this Motion and Memorandum, the Debtor will suffer
irreparable harm if not authorized to use cash collateral on an interim basis. The Debtor, as
expressed herein and in motions to be filed, intends to operate the Debtor's business as a going
concern and pay those ordinary-course operating expenses necessary for the Debtor's continued

---

[3] A Receiver was appointed in the Florida Case. However, the Receiver was appointed over
Investments Australia, LLC and Altels Management, LLC and all of its subsidiaries. The Debtor
is none of those entities. The receivership proceedings were terminated in November, 2013.

operations. Without waiving its right to contest the validity of any lien, the Debtor will, in time, propose to sell the Collateral to maximize the return to those parties that have perfected security interests in the Collateral.

25.     It is also important for the Debtor to be able to use the Collateral on an ongoing basis in order to stabilize its cash flow, pay operating obligations, and protect the value of the Debtor's operations.

26.     11 U.S.C. § 361 provides that adequate protection may be made by a debtor in possession to a secured creditor providing a replacement lien on the assets to each party to the full extent of the value, if any, of each party's respective Security Interest at the commencement of the case.

27.     This offer of providing a replacement lien to the extent of the value of any Security Interest will provide adequate protection both to the Mawardis and to Highgate, permitting the Debtor time to proceed with a confirmed Chapter 11 plan.

28.     Accordingly, the Debtor submits that its adequate protection proposal is consistent with 11 U.S.C. § 361. The provisions of this Motion and request for authorization are fair and reasonable under the current circumstances, and the use of the Collateral will allow for the Debtor to fund current operations. The Debtor states that it is appropriate for the Court to grant this Motion. A proposed order is attached as Exhibit I.

Respectfully submitted,

 /s/ James A. Coutinho
Myron N. Terlecky (0018628)
James A. Coutinho (0082430)
Strip Hoppers Leithart McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, OH 43215
T: (614) 228-6345     F: (614) 228-6369
mnt@columbuslawyer.net; jac@columbuslawyer.net
Proposed Attorneys to the Debtor

8

# EXHIBIT A

## LBR Form 4001–2

### Cash Collateral / Postpetition Financing Provisions

The Debtor, through a separately filed motion, agreed order or stipulation has requested the approval of the use of cash collateral, which contains the following provisions:

| Page No. | Line No. (If Applicable) | Description of Provision |
|---|---|---|
| ☒ ___3___ | ¶3(A),(B)(C) | **(A)** Provisions providing for adequate protection or priority for a claim that arose before the commencement of the case, including: |
| ☐ _____ | _____ | **(i)** Cross-collateralization clauses (i.e., clauses that secure the repayment of prepetition debt with postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law); or |
| ☐ _____ | _____ | **(ii)** Roll-up clauses (i.e., clauses that provide for the use of property of the estate or the proceeds of a postpetition loan to make cash payments on prepetition debt). |
| ☐ _____ | _____ | **(B)** Provisions or findings of fact that release, waive, or limit any claim or other cause of action belonging to the estate or the trustee, including but not limited to: |
| ☐ _____ | _____ | **(i)** the release, waiver, or limitation of claims or other causes of action against any secured creditor without first giving parties in interest at least 75 days from the entry of the order and the creditors' committee, if appointed, at least 60 days from the date of its appointment to investigate such matters.; |
| ☐ _____ | _____ | **(ii)** the release, waiver, or limitation of claims or other causes of action against any secured creditor for alleged prepetition torts or breaches of contract; |
| ☐ _____ | _____ | **(iii)** the waiver of avoidance actions under the Code; or |
| ☐ _____ | _____ | **(iv)** any modification of the statute of limitations or other deadline to commence an action. |
| ☐ _____ | _____ | **(C)** Provisions or findings of fact that determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. |
| ☐ _____ | _____ | **(D)** Provisions that grant a lien on property of the estate that is not otherwise subject to a lien, grant a junior lien on property of the estate that is subject to a lien, or create a lien senior or equal to any existing lien without the consent of that lienholder. |
| ☐ _____ | _____ | **(E)** Provisions that release, waive, or limit any right under § 506(c) of the Code. |

☐ _____   _____   **(F)** Provisions that grant a lien on any claim or causes of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) of the Code.

☐ _____   _____   **(G)** Provisions that provide disparate treatment with regard to professional fee carveouts for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor.

☐ _____   _____   **(H)** Provisions that prime administrative expenses of the kind specified in §§ 503(b) or 507(a) of the Code.

☐ _____   _____   **(I)** Provisions that waive or modify any entity's authority or right to file a plan or seek an extension of time in which the debtor has the exclusive right to file a plan or otherwise operate to divest the debtor of any discretion in the administration of the estate or limit access to the court to seek any relief under other applicable provisions of law.

☐ _____   _____   **(J)** Provisions that establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or entry of a confirmation order.

☐ _____   _____   **(K)** Provisions providing for the indemnification of any entity.

☐ _____   _____   **(L)** Provisions waiving or modifying provisions of the Code or applicable rules relating to the automatic stay.

☐ _____   _____   **(M)** Provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien.

☐ _____   _____   **(N)** Provisions that waive or modify the debtor's right to move for a court order pursuant to § 363(c)(2)(B) of the Code authorizing the use of cash collateral or § 364 of the Code to obtain credit.

☐ _____   _____   **(O)** Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order.

☐ _____   _____   **(P)** Findings of fact on matters extraneous to the approval process.

☐ _____   _____   **(Q)** Provisions that bar the debtor from future bankruptcy filings.

EXHIBIT B

# Barrington Spring House, LLC, Case No. 14-30054
## Cash Flow Projections

|  | 2014 January | 2014 February |
|---|---|---|
| **Summary** | | |
| **Beginning Cash Balance** | **$ 9,000.00** | **$ (7,618.54)** |
| Income | $ 36,235.00 | $ 36,235.00 |
| Expenses | $ 52,853.54 | $ 41,463.25 |
| **Net Change in Cash** | **$ (16,618.54)** | **$ (5,228.25)** |
| **Ending Cash Balance** | **$ (7,618.54)** | **$ (12,846.79)** |
| | | |
| **Sources of Cash** | | |
| Month-to-Month Fee | $ 450.00 | $ 450.00 |
| Rent Charges | $ 33,000.00 | $ 33,000.00 |
| Tenant Billed Utilities | $ 2,000.00 | $ 2,000.00 |
| Pet Fees | $ 125.00 | $ 125.00 |
| Late Charges | $ 600.00 | $ 600.00 |
| Carport Fees | $ 60.00 | $ 60.00 |
| **Total Sources of Cash** | **$ 36,235.00** | **$ 36,235.00** |
| | | |
| **Uses of Cash/Expenses** | | |
| Employee Expenses | | |
| Payroll* | $ 17,070.86 | $ 11,380.57 |
| Payroll Taxes | $ 1,400.00 | $ 1,100.00 |
| Aflac | $ 200.00 | $ 200.00 |
| Unemployment | $ 220.00 | $ 220.00 |
| Workers' Comp | $ 561.68 | $ 561.68 |
| Capital Expenses | | |
| Repairs and Maintenance | $ 5,000.00 | $ 5,000.00 |
| Unit Turnover Costs | $ 2,000.00 | $ 2,000.00 |
| Property Insurance** | $ - | $ - |
| Real Estate Taxes | $ - | $ - |
| Utilities | $ 17,800.00 | $ 17,800.00 |
| Security | $ 5,400.00 | |
| Office Expenses | | |
| Marketing | $ 875.00 | $ 875.00 |
| Answering Service | $ 540.00 | $ 540.00 |
| Supplies/Postage etc. | $ 200.00 | $ 200.00 |
| Phone/Internet | $ 520.00 | $ 520.00 |
| Bank Fees | $ 100.00 | $ 100.00 |
| Auto Expense | $ 350.00 | $ 350.00 |
| Credit Reports | $ 200.00 | $ 200.00 |
| Other Misc Expenses | $ 200.00 | $ 200.00 |
| Bankruptcy Expenses | | |
| UST Fees | $ 216.00 | $ 216.00 |
| **Total Expenses** | **$ 52,853.54** | **$ 41,463.25** |

* Inclues expected payment of pre-petition periods.
** Prepaid 6 months prior to filing.

EXHIBIT C

Type: Deeds
Kind: DEED
Recorded: 12/29/2011 12:52:43 PM
Fee Amt: $60.00  Page 1 of 6
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2011-00077657

TRANSFER
12:41pm     DECEMBER 29, 2011
KARL L. KEITH, COUNTY AUDITOR
Conv/Tran #: 17001     $8,310.00

6

(O.R.C. 5302.05 & .06)

### Limited WARRANTY DEED

Jacqueline A. Streit, Trustee of the Edward F. Streit Trust dated May 17, 2004, for valuable consideration paid, grant(s), with limited warranty covenants, to Barrington Spring House, LLC, an Ohio limited liability company, whose tax mailing address is c/o 4142 N. 26th Terrace, Hollywood, FL 33020                    , the following real property:

Located in Dayton, Montgomery County, Ohio, which land is more fully described in the attached **Exhibit A**.

This conveyance is subject to all easements and restrictions of record as of this date.

Prior Instrument Reference: Instrument No. 08-49735.

Executed this ___28th___ day of December, 2011.

_Jacqueline A. Streit_

Jacqueline A. Streit, Trustee of the Edward F. Streit
Trust dated May 17, 2004

TR6

Instrument Number: 2011-00077657  Seq: 1

**EXHIBIT C**

State of _FLORIDA_ }
} ss:
County of _LEE._ }

The foregoing was acknowledged before me this _28_ day of December, 2011 by Jacqueline A. Streit, Trustee of the Edward F. Streit Trust dated May 17, 2004.

(seal) 

COREY WAYLAND
Notary Public, State of Florida
Commission# DD858820
My comm. expires Feb. 5, 2013

Notary Public    _COREY WAYLAND_
My Commission Expires: _FEB. 05, 2013_

Drafted by & when recorded, return to:
Paul E. Perry, Esq.
Miller Canfield Paddock & Stone
511 Walnut Street, 19th Floor
Cincinnati, Ohio 45202

_mail_
_Strauss & Troy_
_150 E. 4th St._
_Cincinnati, OH. 45202_

Instrument Number: 2011-00077657 Seq: 2

EXHIBIT C

EXHIBIT A TO DEED

LEGAL DESCRIPTION

**Auditor's Parcel No. E20-10-8-17,146 (Phase I - 5.880 acres:**

Parcel I:

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the northeast line of Riverside Drive as recorded in book 71, page 70 in the plat records of Montgomery County, Ohio with the east line of said section 8; thence with the northeast line of said Riverside Drive in a northwesterly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for one hundred fifty-four and 64/100 (154.64) feet; thence continuing with the northeast line of said Riverside Drive on a tangent to said curve bearing north fifty-three degrees zero minutes (53° 00') west for four hundred twenty-two and 81/100 (422.81) feet; thence continuing with the northeast line of said Riverside Drive in a northwesterly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for four hundred fifty and 39/100 (450.39) feet; thence continuing with the northeast line of said Riverside Drive on a tangent to the last mentioned curve bearing north nineteen degrees fourteen minutes forty seconds (19° 14' 40") west for twenty-one and 02/100 (21.02) feet to a point in the original centerline of Shoup Mill Road; thence with the original centerline of said Shoup Mill Road, north seventy-five degrees forty-seven minutes fifty seconds (75° 47' 50") east for forty-nine and 15/100 (49.15) feet; thence south three degrees thirty-four minutes ten seconds (3° 34' 10") west for seventy-five and 00/100 (75.00) feet; thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for two hundred seventy-five and 00/100 (275.00) feet; thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for thirty-six and 50/100 (36.50) feet; thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for two hundred forty-one and 00/100 (241.00) feet; thence north three degrees thirty-four minutes ten seconds (3° 34' 10") east for thirty-six and 50/100 (36.50) feet; thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for one hundred eighty-five and 00/100 (185.00) feet to a point in the east line of said section 8; thence with the east line of said section 8, south zero degrees twenty-four minutes twenty seconds (00° 24' 20") west for six hundred six and 43/100 (606.43) feet to the point of beginning, containing 5.880 acres, (256,120 square feet), more or less, according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

**Auditor's Parcel No. E20-10-8-147 (Phase I - 5.3180 acres)**

Parcel II:

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at a point in the west line of Forest Park Drive at its southernmost corner as recorded in book 71, page 70 in the plat records of Montgomery County, Ohio said point being in a north line of land conveyed to NRET, Interim, Inc. by deed recorded in micro 80-534E01 in the deed records of Montgomery

Instrument Number: 2011-00077657   Seq: 3

EXHIBIT C

County, Ohio; thence with the north line of said NRET, Interim, Inc. Land, north forty degrees zero minutes (40° 00') west for three hundred thirty-two and 24/100 (332.24) feet to a corner of land conveyed to the Board of Education of the Dayton School District by deed recorded in book 1829 page 297 in the deed records of Montgomery County, Ohio; thence north forty-four degrees four minutes forty seconds (44° 04' 40") east for six hundred seventy-two and 37/100 (672.37) feet to a point in the south line of Riverside Drive; thence with the south line of said Riverside Drive, south fifty-three degrees zero minutes (53° 00') east for two hundred seventeen and 55/100 (217.55) feet; thence continuing with the south line of said Riverside Drive in an easterly direction on a curve to the left, with a radius of eight hundred thirty-four and 48/100 (834.48) feet for thirty-two and 00/100 (32.00) feet, tangent to said curve at its beginning being last mentioned bearing; thence in a southerly direction on a curve to the right, with a radius of twenty and 00/100 (20.00) feet for thirty and 25/100 (30.25) feet to a point in the west line of said Forest Park Drive; thence with the west line of said Forest Park Drive on a tangent to last mentioned curve bearing south thirty-one degrees twenty-six minutes fifty seconds (31° 26' 50") west for two hundred ninety-six and 72/100 (296.72) feet; thence continuing with the west line of said Forest Park Drive in a southerly direction on a curve to the right with a radius of seven hundred sixty-nine and 48/100 (769.48) feet for two hundred forty- nine and 16/100 (249.16) feet, tangent to said curve at its beginning being last mentioned bearing; thence with the west line of said Forest Park Drive on a tangent to last mentioned curve bearing south fifty degrees zero minutes (50° 00') west for one hundred eighty-six and 45/100 (186.45) feet to the point of beginning, containing 5.318 acres more or less (231,668 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

### Auditor's Parcel No. E20-10-9-112, 113 (Phase II):

Located in Section 9, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the west line of said section 9, with the north line of Riverside Drive as recorded in book 75 page 68 in the plat records of Montgomery County, Ohio; thence with the west line of said section 9, north zero degrees twenty-four minutes twenty seconds (00° 24' 20") east for five hundred seventy-six and 39/100 (576.39) feet to a point in the south line of Old Riverside Drive as dedicated in book 75 page 68 in the plat records of Montgomery County, Ohio; thence with the south line of said Old Riverside Drive, south eighty-six degrees thirty-four minutes thirty seconds (86° 34' 30") east for seventy-three and 25/100 (73.25) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve to the left, with a radius of one thousand and 00/100 (1,000.00) feet for forty-three and 63/100 (43.63) feet, chord to said curve bearing south eighty-seven degrees forty-nine minutes thirty seconds (87° 49' 30") east for forty-three and 63/100 (43.63) feet; thence continuing with the south line of said Old Riverside Drive on a tangent bearing south eighty-nine degrees four minutes thirty seconds (89° 04' 30") east for forty-one and 71/100 (41.71) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve to the right, with a radius of forty-five and 00/100 (45.00) feet for thirty-nine and 73/100 feet, chord to said curve bearing south sixty-three degrees forty-seven minutes (63° 47') east for thirty-eight

Instrument Number: 2011-00077657  Seq: 4

EXHIBIT C

and 45/100 (38.45) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve to the left, with a radius of forty-five and 00/100 feet (45.00) for ninety and 75/100 (90.75) feet; chord to said curve bearing north eighty-three degrees forty-four minutes ten seconds (83° 44' 10") east for seventy-six and 13/100 (76.13) feet; thence continuing with the south line of said Old Riverside Drive, south eighty-three degrees thirty minutes thirty seconds (83° 30' 30") east for two and 57/100 (2.57) feet to the eastern terminus of said Old Riverside Drive; thence with the east line of said Old Riverside Drive, north six degrees twenty- nine minutes thirty seconds (6° 29' 30") east for sixty-five and 06/100 (65.06) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand three hundred sixty-two and 55/100 (1,362.55) feet for two hundred seven and 16/100 (207.16) feet, chord to said curve bearing south seventy-seven degrees thirty-six minutes fifty seconds (77° 36' 50") east for two hundred six and 96/100 (206.96) feet; thence south seventy-three degrees fifteen minutes thirty seconds (73° 15' 30") east for one hundred thirty-seven and 10/100 (137.10) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for one hundred eighty-five and 61/100 (185.61) feet, chord to said curve bearing south sixty-eight degrees seven minutes fifteen seconds (68° 07' 15") east for one hundred eighty-five and 36/100 (185.36) feet; thence south sixty-two degrees fifty-nine minutes (62° 59') east for thee hundred eighty-one and 04/100 (381.04) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for six hundred fifteen and 03/100 (615.03) feet; chord to said curve bearing south forty-five degrees fifty-seven minutes thirty-five seconds (45° 57'35") east for six hundred six and 03/100 (606.03) feet; thence south twenty-eight degrees fifty-six minutes ten seconds (28° 56' 10") east for two hundred seventy-five and 50/100 (275.50) feet; thence south sixty-one degrees three minutes fifty seconds (61° 03' 50") west for eleven and 25/100 (11.25) feet to a point in the north line of Riverside Drive; thence with the north line of said Riverside Drive in a westerly direction on a curve to the left, with a radius of seven hundred eighty-two and 34/100 (782.34) feet for seven hundred two and 17/100 (702.17) feet, chord to said curve bearing north sixty-four degrees seventeen minutes six seconds (64° 17' 06") west for six hundred seventy-eight and 84/100 (678.84) feet; thence continuing with the north line of said Riverside Drive on a tangent bearing north eighty-nine degrees fifty-nine minutes fifty seconds (89° 59' 50") west for seven hundred forty-six and 96/100 (746.96) feet; thence continuing with the north line of said Old Riverside Drive in a westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for three hundred thirty-nine and 02/100 (339.02) feet to the point of beginning, chord to said curve bearing north seventy-seven degrees seventeen minutes thirty-five seconds (77° 17' 35") west for three hundred thirty-six and 25/100 (336.25) feet, and containing 17,740 acres more or less (772,738 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio dated July, 1965 and revised January 6, 1983. Curve distances are measured on the arc.

Excepting therefrom:

The .1595 acre conveyed for public highway purposes to the Board of County Commissioners of Montgomery County, Ohio by deed no. 78-237B05 and being more particularly described as follows:

Located in Section 9, Town 2, Range 6 East, Harrison Township, County of Montgomery, State of Ohio and being a tract of land described as follows:

Beginning at a point in the west line of land conveyed to Lloyd M. Whitesell, et al by deed recorded in microfiche #71-308A11 in the deed records of Montgomery County, Ohio, said point of beginning also being the north corner of Kingsley Village, section two as recorded in book 90, page 143 in the plat records of Montgomery County, Ohio; thence with the west line of said Kingsley Village, section two, south twenty-eight degrees fifty-six minutes ten seconds (28° 56' 10") east for one hundred thirty-three and 55/100 (133.55) feet to an angle in the west line of said Kingsley Village, section two; thence south sixty-one degrees three minutes fifty seconds (61° 03' 50") west for eleven and 28/100 (11.28) feet to an angle in the west line of said Kingsley Village, section two, said point being also in the east line of land conveyed to Montgomery County Commissioners by deed recorded in book 1916, page 642 in the deed records of Montgomery County, Ohio; thence northwardly with the east line of said Montgomery County Commissioners

Instrument Number: 2011-00077657  Seq: 5

EXHIBIT C

land on a curve to the left with a radius of seven hundred eighty-two and 34/100 (782.34) feet for three hundred thirty and 18/100 (330.18) feet, tangent to said curve at its point of beginning bearing north thirty-eight degrees thirty-four minutes thirty-six seconds (38° 34' 36") west; thence leaving the east line of said Montgomery County Commissioners land, north twenty-four degrees twenty-five minutes six seconds (24° 25' 06") west for eight and 27/100 (8.27) feet; thence south sixty-two degrees two minutes forty seconds (62° 02' 40") east for fifteen and 50/100 (15.50) feet; thence along a curve to the left with a radius of one thousand three hundred ninety-one and 395/1000 (1,391.395) feet for one hundred twenty and 34/100 (120.34) feet; tangent to said curve at its point of beginning bearing south sixty-two degrees two minutes forty seconds (62° 02' 40") east, thence south sixty-seven degrees no minutes no seconds (67° 00' 00") east for eighty-six and 77/100 (86.77) feet to the point of beginning, containing no and 1595/10000 (0.1595) acres, more or less.

## Auditor's Parcel No. E20-181-9-1 (Phase III):

Located in Section 9, Town 2, Range 6 East, Harrison Township, Montgomery County, State of Ohio, and being all of Lot No. 1 in the Colony at Forest Park - Phase III, as recorded in book 83, page 25 in the plat records of Montgomery County, Ohio.

Commonly known as:  **4346 Riverside Drive, Dayton, OH 45405**

Tax Parcel Nos.:       E20-10-8-17, 146
                       E20-10-8-147
                       E20-10-9-112, 113
                       E20-181-9-1

Prior Deed Reference:   Instrument No. 08-49735

19,649,471.1\148413-00002

```
┌─────────────────────────────────────┐
│           KARL KEITH                 │
│          COUNTY AUDITOR              │
│  MONTGOMERY COUNTY DAYTON, OHIO      │
│    DESCRIPTION APPROVED FOR          │
│   STRAIGHT TRANSFER CLOSURE          │
│          NOT CHECKED.                │
│  BY_____  DATE 12-29-11           │
│         MAP DEPARTMENT               │
└─────────────────────────────────────┘
```

Instrument Number: 2011-00077657   Seq: 6

EXHIBIT D

**PROMISSORY NOTE**

As of September 10, 2013                                        Miami, Florida

FOR VALUE RECEIVED, Barrington Spring House, LLC, an Ohio limited liability company
with its principal place of business at c/o Archer Bay, P.A., 2639 Dr. Martin Luther King, Jr. Street,
Saint Petersburg, Florida 33704 (**"Maker"**) hereby promises to pay to the order of Keith Mawardi,
Limor Mawardi and Rafael Mawardi (collectively **"Holder"**) jointly and severally, the principal
amount of Three Millions Five Hundred Thousand and 00/100 United States Dollars
($3,500,000.00) on or before September 10, 2018 ("Maturity Date"), and to pay interest on the
unpaid principal balance hereof at the rate of six percent (6%) per annum (the "Applicable Rate")
commencing on the date hereof (the "Note") shall be payable in accordance with the terms set
forth below.

      1.     Payments of Principal and Interest.

      a.     Payment of Principal. The principal amount of this Note, together with all accrued
and unpaid interest and all other sums due and payable hereunder, shall be due and payable on or
before the Maturity Date.

      b.     Payment of Interest. Interest on the unpaid principal balance of this Note shall
accrue at the Applicable rate commencing on the date of this Note. Interest shall be computed on
the basis of a 360-day year and paid for the actual number of days elapsed. Accrued and unpaid
interest under this Note shall be paid in equal monthly installments of Seventeen Thousand Five
Hundred and 00/100 United States Dollars ($17,500.00).

      c.     Payment of Default Interest. Any amount of principal interest on this Note which
is not paid when due shall bear interest from the date due until such past due amount is paid at a
rate of interest equal to the lesser of (i) eighteen percent (18%) per annum, or (ii) the highest non-
usurious rate permitted by applicable law (the "Default Rate").

      d.     General Payment Provisions. All payments of principal and interest on this Note
shall be made in lawful money of the United States of America by certified bank check, attorneys'
trust fund check or wire transfer to the Holder by making payment to the Stok Folk + Kon Trust
Account. Whenever any amount expressed to be due by the terms of this Note is due on any day
which is not a Business Day, the same shall instead be due on the next succeeding Business Day.
For the purposes of this Note, "Business Day" shall mean any day other than a Saturday, Sunday
or a day which commercial banks in the State of Florida are authorized or required by law or
executive order to remain closed.

      e.     This Note and all obligations due hereunder is secured by a mortgage of even date
on real property, improvements, rents and profits, situated in Montgomery County, Ohio.

f.     Optional Prepayment.  The Maker may from time to time prepay the Note, in whole or in part, without any penalty.  Upon prepayment of this Note, principal and interest, in full, the Holder shall have no further rights under this Note.

2.     Defaults and Remedies.

a.     Events of Default.  The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (i) the Maker shall fail to pay any installment of interest, principal or other sums due under this Note within five (5) business days of when any such payment shall be due and payable and such default is not cured within ten (10) days after delivery of written notice thereof from Holder to Maker; (ii) the Maker makes an assignment for the benefit of creditors; (iii) any order or decree is rendered by a court which appoints or requires the appointment of a receiver, liquidator or trustee for the Maker and the order or decree is not vacated within thirty (30) days from the date of entry hereof; (iv) any order or decree is rendered by a court adjudicating Maker insolvent and the order or decree is not vacated within thirty (30) days from the date of entry thereof; (v) the Maker files a petition in bankruptcy under the provisions of any bankruptcy law or any insolvency act; (vi) the Maker admits, in writing, its inability to pay its debts as they become due; (vii) a proceeding or petition in bankruptcy is filed against the Maker and such proceeding or petition is not dismissed within forty-five (45) days from the date it is filed; (viii) the Maker files a petition or answer seeking reorganization or arrangement under the bankruptcy laws or any law or statute of the United States or any other foreign country or state; (ix) Maker fails to keep Holder advised of any change in Maker's address, telephone number or email address; or (x) the Maker shall fail to perform, comply with or abide by any of the stipulations, agreements, conditions and/or covenants contained in this Note on the party of the Maker to be performed, complied with or abided by, and such failure is not cured within thirty (310) days after written notice of such failure is delivered by Holder to the Maker, or in the event such failure cannot be cured within thirty (310) days and no reasonable attempt by Maker has been commenced and diligently pursued within said thirty (310) day period.

b.     Remedies.  Upon the occurrence of one or more of Events of Default, the Holder at its option and without further notice, demand or presentment for payment to the Maker or others, may declare the then outstanding principal balance of this Note, together with all other sums due under the Note, immediately due and payable, together with all accrued and unpaid interest thereon and thereafter all sums shall bear interest at the Default Rate, together with all reasonable attorneys' fees, paralegals' fees and costs and expenses incurred by the Holder in collecting or enforcing payment thereof (whether such fees, costs or expenses are incurred in negotiations, all trial and appellate levels, administrative proceedings, bankruptcy proceedings or otherwise), and all other sums due by the Maker hereunder, all without any relief whatsoever from any valuation or appraisement laws and payment thereof may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to the Holder at law, in equity, or under this Note.  Any accrued but unpaid interest and other sums due by the Maker hereunder shall, at the option of the Holder, be included, from time to time, in the Conversion Amount.

3.     Lost or Stolen Note.  Upon notice to the Maker of the loss, theft, destruction or mutilation of this Note, and in the case of loss, theft or destruction of an indemnification

undertaking by the Holder to the Maker in a form reasonably acceptable to the Maker and in the case of mutilation, upon surrender and cancellation of the Note, the Maker shall execute and deliver a new Note of like tenor and date and in substantially the same form as this Note.

4.     Cancellation. After all principal, accrued interest and all other sums at any time owed on this Note have been paid in full, this Note shall automatically be deemed cancelled, shall be surrendered to the Maker for cancellation and shall not be re-issued.

5.     Waivers. The Maker and all others who are, or may become liable for the payment hereof (i) severally waive presentment for payment, demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and, except as otherwise provided in this Note, all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note; (ii) expressly consent to all extensions of time, renewals or postponements of time of payment of this Note from time to time prior to or after the maturity of this Note without notice, consent or further consideration to any of the foregoing; (iii) expressly agree that the Holder shall not be required first to institute any suit or to exhaust its remedies against the Maker or any other person or party to become liable hereunder or against any collateral that may secure this Note in order to enforce the payment of this Note; and (iv) expressly agree that, notwithstanding the occurrence of any of the foregoing (except the express written release by the Holder of any such person), the undersigned shall be and remain, directly and primarily liable for all sums due under this Note.

6.     Governing Law. This Note shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Note shall be governed by the laws of the State of Ohio, without giving effect to provisions thereof regarding conflict of laws. Each party hereto hereby irrevocably submits to the exclusive jurisdiction of either the Ohio state courts sitting in Montgomery County, Ohio or the Florida state courts sitting in Miami-Dade County, Florida for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding, any claim that is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereto hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by sending by certified mail or overnight courier a copy thereof to such party at the address indicated in the preamble hereto and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES TO NOT REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION HEREWITH OR ARISING OUT OF THIS NOTE OR ANY TRANSACTION CONTEMPLATED HEREBY.

7.     Indemnity and Expenses. The Maker agrees:

a.      To indemnify and hold harmless the Holder and each of its partners, employees, agents and affiliates from and against any and all claims, damages, demands, losses, obligations, judgments, suits, actions, threats and liabilities (including, without limitation, attorneys' fees and expenses) in any way arising out of or in connection with this Note; and

b.      To pay and reimburse the Holder upon demand for all costs and expenses (including without limitation, attorneys' fees and expenses) that the Holder may incur in connection with (i) the exercise or enforcement of any rights or remedies (including but not limited to collection) granted hereunder or otherwise available to it (whether at law, in equity or otherwise), or (ii) the failure by Maker to perform or observe any of the provisions hereof.  The provisions of this Section 7 shall survive the execution and delivery of this Note, the repayment of any or all of the principal or interest owed pursuant hereto, and the termination of this Note.

8.      Remedies, Characterizations, Other Obligations, Breaches and Injunctive Relief. The remedies of the Holder as provided herein, shall be cumulative and concurrent and may be in the event that any one or more of the provisions of this Note operates or would prospectively operate to invalidate this Note, and then in any of those events, only such provision or provisions shall be deemed null and void and shall not affect any other provision of this Note.  The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

9.      Specific Shall Not Limit General; Construction.  No specific provision contained in this Note shall limit or modify any more general provision contained herein.  This Note shall be deemed to be jointly drafted by the Maker and the Holder and shall not be construed against any person as the drafter hereof.

10.     Failure or Indulgence Not Waiver.  Holder shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder, unless such waiver is in writing and signed by Holder, and then only to the extent specifically set forth in the writing.  A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

11.     Notice.  Notice shall be given to each party at the address indicated in the preamble hereto or at such other address as provided to the other party in writing.

12.     Usury Savings Clause.  Notwithstanding any provision in this Note, the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees, exactions, or other sums which may at any time be deemed to be interest, shall not exceed the limit imposed by the usury laws of the jurisdiction governing this Note or any other applicable law.  In the event the total liability of payments of interest and payments in the nature of interest, including without limitation, all charges, fees, exactions or other sums which may at any time be deemed to be interest, shall, for any reason whatsoever, result in an effective rate of interest, which for any month or other interest payment period exceeds the limit imposed by the usury laws of the jurisdiction governing this Note, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice

by, between, or to any party hereto, be applied to the reduction of the outstanding principal balance of this Note immediately upon receipt of such sums by the Holder hereof, with the same force and effect as though the maker had specifically designated such excess sums to be so applied to the reduction of such outstanding principal balance and the Holder hereof had agreed to accept such sums as a penalty-free payment of principal; provided, however, that the Holder of this Note may, at any time and from time to time, elect by notice in writing to the Maker, to waive reduce, or limit the collection of any sums in excess of those lawfully collectible as interest rather than accept such sums as a prepayment of the outstanding principal balance. It is the intention of the parties that the Maker does not intend or expect to pay nor does the Holder intend or expect to charge or collect any interest under this Note greater than the highest non-usurious rate of interest which may be charged under applicable law.

13. <u>Binding Effect</u>. This Note shall be binding upon the Maker and the successors and assigns of the Maker and shall inure to the benefit of Holder and the successors and assigns of Holder.

14. <u>Severability</u>. In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, in any respect, or in the event that any one or more of the provisions of this Note operates or would prospectively operate to invalidate this Note, then and in any of those events, only such provision or provisions shall be deemed null and void and shall not affect any other provision of this Note. The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

15. <u>Participations</u>. Holder may from time to time sell or assign in whole or in part, or grant participations in this Note and/or the obligations evidenced hereby, without first obtaining the Maker's consent. The holder of any such sale, assignment or participation, if the applicable agreement between Holder and such holder so provides shall be: (a) entitled to all of the rights, obligations, and benefits of Holder (to the extent of such holder's interest or participation); and (b) deemed to hold and any exercise the rights of setoff or banker's lien with respect to any and all obligations of such holder to the Maker (to the extent of such holder's interest or participation <u>in this agreement</u>), in each case as fully as though Maker was directly indebted to such holder. Holder may in its discretion give notice to the Maker of such sale, assignment or participation; however, the failure to give such notice shall not affect any of Holder's or such holder's rights hereunder.

16. <u>Amendments</u>. The provisions of this Note may be changed only by a written agreement executed by the Maker and the Holder.

[Signature on Following Page]

IN WITNESS WHEREOF, the Maker has caused this Note to be executed on and as of the date set forth above.

**BARRINGTON SPRING HOUSE, LLC**

_____

BY: Geoffrey W. Edelsten
ITS: Manager

ACKNOWLEDGMENT

_____ of _____, _____ of Australia
BEFORE ME, the undersigned, _____, of and for the aforesaid
jurisdiction, personally appeared Geoffrey W. Edelsten, with whom I am personally acquainted
and who upon oath acknowledged and identified himself to be the Manager of Barrington Spring
House, LLC, a limited liability company organized under the laws of the State of Ohio, and that
he as such Manager of the LLC, executed the above instrument on behalf of the LLC, he being
so authorized to do as the free act and deed of the LLC, and for the purposes therein contained.
This the _____ day of December, 2013.

My Commission Expires _____

_____
Notary Public
[NOTARY SEAL]

## MORTGAGE

This Mortgage is made between mortgagor/grantor Barrington Spring House, LLC, an Ohio limited liability company (the "Borrower") with a principal place of business at c/o Archer Bay, P.A., 2639 Dr. MLK Street N, St. Petersburg, FL 33704, and mortgagee/lender Issac Keith Mawardi, Limor Mawardi, and Rafael Mawardi, jointly and severally (the "Lender") whose address is c/o Stok Folk + Kon, 18851 NE 29th Ave., Suite 1005, Aventura, Florida 33180.

BORROWER acknowledges and has executed a Promissory Note of the same date to LENDER in the amount of THREE MILLION FIVE HUNDRED THOUSAND DOLLARS (US $3,500,000.00) (the "Note"). The unpaid principal balance, plus advances if any, shall be due and payable in full on or before September 10, 2018, ("Maturity Date") as more particularly set forth in the Note. At all times before full repayment of the Note, the outstanding principal balance shall accrue interest at the rate of Six Percent (6%) per annum from the date of the Note. The Note provides for prepayment, in whole or in part, without penalty.

To secure to LENDER (a) repayment of the indebtedness evidenced by the Note, with interest thereon, and any renewals, extensions or modifications; (b) the repayment of any future Advances, with interest thereon, made by LENDER to BORROWER pursuant to the terms and conditions hereof, if any; and (c) the performance of covenants and agreements of BORROWER contained herein, BORROWER does hereby mortgage, grant, convey and assign to LENDER the real property located in Montgomery County, Ohio with a street address of 4346 Riverside Park Dive, Dayton, Ohio 45405, being more fully described as follows: **See Exhibit "A" attached hereto**

TOGETHER with all buildings, improvements, appurtenances and tenements now or hereafter erected on said real property, and all heretofore or hereafter vacated alleys, streets, avenues and ways abutting the property, and all easements, rights, appurtenances, rents, royalties, and profits thereof (herein collectively referred to as the "Property").

BORROWER covenants that BORROWER is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property, that the Property is unencumbered and that BORROWER will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in the schedule of exemptions to coverage in any title insurance policy insuring LENDER'S interest in the Property.

    1.    PAYMENT OF PRINCIPAL AND INTEREST. BORROWER shall promptly pay when due the principal of and interest on the indebtedness evidence by the Note, and any other charged provide in the Note and all other sums secured by this instrument.

    2.    FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES. LENDER will not escrow for taxes or insurance after the closing date. BORROWER shall pay these costs directly. In the event BORROWER fails to pay the annual property taxes by before they are delinquent, the mortgage will be in default. LENDER shall give BORROWER thirty (30) days' notice to cure this default and may then, at LENDER'S option, (i) foreclose the mortgage and/or

Type: Mortgages
Kind: MORTGAGE
Recorded: 1/6/2014 3:50:41 PM
Fee Amt: $104.00  Page 1 of 9
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2014-00000734

(ii) pay the taxes themselves, the amount of these taxes being added to the principal outstanding of the loan and drawing interest at the same rate as the remainder of the loan.

3.    APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, all payments received by LENDER from BORROWER under the Note or this instrument shall be applied by LENDER in the following order of priority: (i) amounts payable to LENDER under paragraph 2 hereof; (ii) interest payable on the Note; (iii) principal of the Note; (iv) interest payable on any future advances; (v) principal of any future advance; and (vi) any other sums secured by this instrument to be perfected against the property.

4.    CHARGES; LIENS. BORROWER shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without LENDER'S written permission, BORROWER shall not allow any lien inferior to this instrument to be perfected against the Property.

5.    HAZARD INSURANCE. BORROWER shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times reasonably satisfactory to the LENDER against loss by wind, fire, lightning, rent loss and such other hazards, casualties, liabilities and contingencies as LENDER shall reasonably require and in such amounts and for such periods as LENDER shall reasonably require. Any such requirements by LENDER must be set forth in an addendum to this instrument and duly executed by BORROWER. All premiums on insurance policies shall be timely paid, and all insurance policies shall include a standard mortgage clause in favor of LENDER. BORROWER shall provide proof of such insurance, renewals of insurance, and receipts of paid premiums with ten (10) days of demand by LENDER. In the event of loss, BORROWER shall give immediate written notice to the insurance carrier and LENDER. BORROWER hereby authorizes LENDER as attorney-in-fact for BORROWER to make proof-of-loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom LENDER'S expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph shall require LENDER to incur any expense or take any action hereunder. BORROWER further authorizes LENDER to apply the balance of such proceeds to the payment of sums secured by this instrument, whether or not then due, in the order of application set forth in paragraph 3, accounting to the BORROWER for any surplus. In the event the BORROWER does not renew any required insurance policy, then LENDER may obtain loss payee insurance coverage only, which cost shall be payable by BORROWER. Failure to reimburse the LENDER for the cost of this policy within thirty (30) calendar days after being mailed a bill by certified US First Class Mail or Australian equivalent thereof, return receipt requested, shall constitute default under the mortgage. If the Property is sold or if LENDER acquires title to the Property, LENDER shall have all right, title, and interest of BORROWER in and to such insurance policies and unearned premiums thereon and to the proceeds resulting from any damage to the Property prior to such sale and acquisition.

6.    PROTECTION OF LENDER'S SECURITY. If BORROWER fails to perform the covenants and agreements contained in this instrument, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of LENDER therein,

EXHIBIT E

including but not limited to eminent domain, condemnation, insolvency, or bankruptcy, then LENDER may make such appearances, disburse such sums and take such action as LENDER deems necessary to protect LENDER'S interest, including but not limited to disbursement of attorney's fees, entry upon the Property to make repairs, and procurement of satisfactory insurance as provided herein.

7.    WAIVER NOT RELEASED, FORBEARANCE NOT A WAIVER. Any extension of time to make a payment, reduction in monthly payments, release of anyone liable hereunder, acceptance of a renewal note, modification of the terms herein, consent to granting any easement or transfer of any interest in the Property, or alteration of the interest rate, or release any portion of the Property from lien shall not affect the obligation of the BORROWER or BORROWER'S assigns to pay sums secured by this instrument and to observe the covenants of the BORROWER stated herein, and shall not affect the lien or priority of lien on the Property. Any forbearance by LENDER in exercising any right or remedy hereunder shall not be a waiver of or preclude the exercise of any right or remedy available to Lender.

8.    ACCELARATION IN CASE OF BORROWER'S BANKRUPTCY. If BORROWER shall voluntarily file a petition under the Federal Bankruptcy Act, or under any state bankruptcy or insolvency act, or file an answer in an involuntary insolvency proceeding admitting insolvency in inability to pay debts, or if BORROWER should fail to obtain a vacation or stay of proceedings brought for the reorganization, dissolution or liquidation of BORROWER, of it BORROWER shall be adjudged bankrupt, or if a trustee or receiver shall be appointed for BORROWER, or if the Property should become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if BORROWER shall make an assignment for the benefit of BORROWER'S creditors, or if there is an attachment, execution or other judicial seizure of any portion of the BORROWER'S assets and such seizure is not discharged within ten (10) days, then LENDER may declare all the sums secured by this instrument to be immediately due and payable.

9.    TRANSFER OF THE PROPERTY OR BENEFICIAL INTEREST IN BORROW; ASSUMPTION. On sale or transfer of (i) all or part of the Property, or any interest therein, or (ii) beneficial interests in BORROWER, LENDER may declare all sums secured by this instrument immediately due and payable and take all reasonable steps to invoke any remedies provided herein.

10.    NOTICE. Any notice must be sent via US Post Office Certified Mail with Return Receipt at the addresses of the parties indicated above or at a different address if notice is provided to the other party of any address change.

11.    SUCCESSORS AND ASSIGNS BOUND. The covenants and agreements herein contained shall bind, and the rights hereunder inure to, the respective successors and assigns of LENDER and BORROWER, subject to the provisions of paragraph 10 herein. All covenants and agreements of BORROWER shall be joint and several.

12.    GOVERNING LAW, SEVERABILITY. This instrument shall be governed by the law of the jurisdiction in which the Property is situated. In the event that any provision of

this instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this instrument or the Note which can be given effect without the conflicting provisions, and to this end, the provisions of this instrument and the Note are declared to be severable.

13.   ACCELERATION; REMEDIES. Upon BORROWER'S breach of any covenant or agreement of BORROWER in this instrument, LENDER, at LENDER'S option, declare all of the sums secured by this instrument to be immediately due and payable without further demand unless stated otherwise herein, and may foreclose this instrument by judicial proceeding and may invoke any other remedies permitted by applicable law or provided herein. LENDER shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including but not limited to reasonable attorney's fees, costs of documentary evidence, abstracts and title reports.

14.   RELEASE. Upon payment of all sums secured by this instrument, LENDER shall release this instrument. BORROWER shall pay LENDER'S reasonable costs incurred in releasing this instrument.

15.   ATTORNEY'S FEES. In the event that any party instituted legal action, including litigation, to enforce the terms, conditions, promises, covenants and agreements of this instrument or the Note, the prevailing party shall be entitled to reasonable attorneys' fees and costs, and shall include attorneys' fees awarded by an appellate court, if any.

16.   RIDERS. If one or more riders or addenda are executed by BORROWER and recorded together with this instrument, the covenants and agreement of each such rider or addenda shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument.

17.   OHIO COVENANT. BORROWER and LENDER covenant that LENDER is authorized to do all things provided to be done by a mortgagee under section 1311.14 of the Ohio Revised Code.

18.   ASSIGNMENT OF RENTS. Upon the occurrence of a Default, the LENDER shall have the right without notice and without regard to adequacy of any security for the sums hereby secured and with or without the appointment of a receiver, to enter upon and take possession of the Property, and LENDER may operate, manage, rent, and lease the Property and collect any rents, issues, income and profits therefrom, the same being thereby absolutely assigned and transferred to and for the benefit and protection of the LENDER, contingent only upon the occurrence of an event of Default. All rents collected by LENDER may be applied to the cost of operation, maintenance and repair, and reasonable collection, management and attorneys' fees, and then in reduction of any sums hereby secured in such other proportions as LENDER may determine.

19.   HAZARDOUS SUBSTANCES. BORROWER shall immediately give LENDER written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or

environmental law of which BORROWER has actual knowledge. If BORROWER learns, or is notified by any governmental or regulatory authority that removal or mediation of any hazardous substance affecting the Property is necessary, BORROWER shall promptly take all necessary remedial actions in accordance with Environmental Law. "Hazardous substances" are those substances defined as toxic or hazardous by the laws of the State of Ohio or the Federal Government, and include gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides or herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. "Environmental law" is defined as federal, state or local law relating to health, safety and environmental protection.

IN WITNESS WHEREOF, Barrington Spring House LLC, via its authorized signatory Geoffrey W. Edelsten, has executed this agreement as of the ___30___ day of December, 2013.

Barrington Spring House, LLC

By _____

Print Name: Geoffrey W. Edelsten   Title: Manager


ACKNOWLEDGMENT

HUGH JOHN PEARCE of LEVEL 13, 200 QUEEN ST, MELBOURNE, VICTORIA, 3000 of Australia
BEFORE ME, the undersigned, NOTARY PUBLIC , of and for the aforesaid jurisdiction, personally appeared Geoffrey W. Edelsten, with whom I am personally acquainted and who upon oath acknowledged and identified himself to be the Manager of Barrington Spring House, LLC, a limited liability company organized under the laws of the State of Ohio, and that he as such Manager of the LLC, executed the above instrument on behalf of the LLC, he being so authorized to do as the free act and deed of the LLC, and for the purposes therein contained. This the _____ day of December, 2013.

_____
Notary Public
[NOTARY SEAL]

My Commission Expires

**HUGH JOHN PEARCE**
NOTARY PUBLIC
Level 13, 200 Queen Street MELBOURNE
3000, VICTORIA, AUSTRALIA
My appointment is not limited by time


WITNESS ATTESTATION

Signed in my presence by Geoffrey W. Edelsten who is personally known to me.

_____ Signature   (Print Name) ...KAYE WHITTAKER

                                   (Print Address) SHOP 7/108 BOURKE ST, MELB, VIC.

_____ Signature   (Print Name) ...Nadia Auff

                                   (Print Address) ...7/08 Bourke St, Melb

EXHIBIT E

# EXHIBIT A
## (Legal Description)

**Parcel 1:**

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the Northeast line of Riverside Drive as recorded in Book 71, Page 70 in the plat records of Montgomery County, Ohio with the East line of said section 8;

Thence with the Northeast line of said Riverside Drive in a North Westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for one hundred fifty-four and 54/100 (154.54) feet;

Thence continuing with the Northeast line of said Riverside Drive on a tangent to said curve bearing North fifty-three degrees zero minutes (53° 00') West for four hundred twenty-two and 81/100 (422.81) feet;

Thence continuing with the Northeast line of said Riverside Drive in a Northwesterly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for four hundred fifty and 39/100 (450.39) feet;

Thence continuing with the Northeast line of said Riverside Drive on a tangent to the last mentioned curve bearing north nineteen degrees fourteen minutes forty seconds (19° 14' 40") West for twenty-one and 02/100 (21.02) feet to a point in the original centerline of Shoup Mill Road;

Thence with the original centerline of said Shoup Mill Road, North seventy-five degrees forty-seven minutes fifty seconds (75° 47' 50") East for forty-nine and 16/100 (49.16) feet;

Thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for seventy-five and 00/100 (75.00) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for two hundred seventy-five and 00/100 (275.00) feet;

Thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for thirty-six and 50/100 (36.50) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for two hundred forty-one and 00/100 (241.00) feet;

Thence North three degrees thirty-four minutes ten seconds (3° 34' 10") East for thirty-six and 50/100 (36.50) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for one hundred eighty-five and 00/100 (185.00) feet to a point in the East line of said section 8;

Thence with the East line of said section 8, South zero degrees twenty-four minutes twenty seconds (00° 24' 20") West for six hundred six and 43/100 (606.43) feet to the point of beginning  containing 5.880 acres, (256,120 square feet), more or less, according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 110, 1964 and revised January 6, 1983. Curve distances are measured on the arc

**Parcel 2:**
Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

| Form 3011639-C (8/1/00) | Page 1 of 4 | SURETY TITLE AGENCY, INC. | ALTA Commitment (6-17-06) |
| | | | Ohio - Schedule C |

Beginning at a point in the West line of Forest Park Drive at its Southernmost corner as recorded in Book 71, Page 70 in the plat records of Montgomery County, Ohio said point being in a North line of land conveyed to NRET, Interim, Inc. by deed recorded in micro 80-534E01 in the deed records of Montgomery County, Ohio;

Thence with the North line of said NRET, Interim, Inc. Land, North forty degrees zero minutes (40° 00') West for three hundred thirty-two and 24/100 (332.24) feet to a corner of land conveyed to the Board of Education of the Dayton School District by deed recorded in Book 1829 Page 297 in the deed records of Montgomery County, Ohio;

Thence North forty-four degrees four minutes forty seconds (44° 04' 40") East for six hundred seventy-two and 37/100 (672.37) feet to a point in the South line of Riverside Drive;

Thence with the South line of said Riverside Drive, South fifty-three degrees zero minutes (53° 00') East for two hundred seventeen and 55/100 (217.55) feet;

Thence continuing with the South line of said Riverside Drive in an Easterly direction on a curve to the left, with a radius of eight hundred thirty-four and 48/100 (834.48) feet for thirty two and 00/100 (32.00) feet, tangent to said curve at its beginning being last mentioned bearing;

Thence in a Southerly direction on a curve to the right, with a radius of twenty and 00/100 (20.00) feet for thirty and 25/100 (30.25) feet to a point in the West line of said Forest Park Drive;

Thence with the West line of said Forest Park Drive on a tangent to last mentioned curve bearing South thirty one degrees twenty-six minutes fifty seconds (31° 26' 50") West for two hundred ninety-six and 72/100 (296.72) feet;

Thence continuing with the West line of said Forest Park Drive in a Southerly direction on a curve to the right with a radius of seven hundred sixty-nine and 48/100 (769.48) feet for two hundred forty-nine and 16/100 (249.16) feet, tangent to said curve at its beginning being last mentioned bearing;

Thence with the West line of said Forest Park Drive on a tangent to last mentioned curve bearing South fifty degrees zero minutes (50° 00') West for one hundred eighty-six and 45/100 (186.45) feet to the point of beginning, containing 5.318 acres more or less (231,868 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

**Parcel 3**

Located in Section 9, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the West line of said section 9, with the North line of Riverside Drive as recorded in Book 75 Page 68 in the plat records of Montgomery County, Ohio;

Thence with the West line of said section 9, North zero degrees twenty-four minutes twenty seconds (00° 24' 20") East for five hundred seventy-six and 39/100 (576.39) feet to a point in the South line of Old Riverside Drive as dedicated in Book 75 Page 68 in the plat records of Montgomery County, Ohio;

Thence with the South line of said Old Riverside Drive, South eighty-six degrees thirty-four minutes thirty seconds (86° 34' 30") East for seventy-three and 25/100 (73.25) feet;

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the left, with a radius of one thousand and 00/100 (1,000.00) feet for forty-three and 63/100 (43.63) feet, chord to said curve bearing South eighty-seven degrees forty-nine minutes thirty seconds (87° 49' 30") East for forty-three and 63/100 (43.63) feet;

Thence continuing with the South line of said Old Riverside Drive on a tangent bearing South eighty-nine degrees four minutes thirty seconds (89° 04' 30") East for forty-one and 71/100 (41.71) feet;

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the right, with a radius of forty-five and 00/100 (45.00) feet for thirty-nine and 73/100 (39.73) feet, chord to said curve bearing South sixty-three degrees forty-seven minutes (63° 47') East for thirty-eight and 45/100 (38.45) feet;

| Form 5011639-C (8/1/06) | Page 2 of 4 | SURETY TITLE AGENCY INC. | ALTA Commitment (6-17-06)<br>Ohio - Schedule C |

EXHIBIT E

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the left, with a radius of forty-five and 00/100 feet (45.00) for ninety and 75/100 (90.75) feet; chord to said curve bearing North eighty-three degrees forty-four minutes ten seconds (83° 44' 10") East for seventy-six and 13/100 (76.13) feet;

Thence continuing with the South line of said Old Riverside Drive, South eighty-three degrees thirty minutes thirty seconds (83° 30' 30") East for two and 57/100 (2.57) feet to the Eastern terminus of said Old Riverside Drive;

Thence with the East line of said Old Riverside Drive, North six degrees twenty-nine minutes thirty seconds (6° 29' 30") East for sixty-five and 06/100 (65.06) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand three hundred sixty-two and 55/100 (1,362.55) feet for two hundred seven and 16/100 (207.16) feet, chord to said curve bearing South seventy-seven degrees thirty-six minutes fifty seconds (77° 36' 50") East for two hundred six and 96/100 (206.96) feet;

Thence South seventy-three degrees fifteen minutes thirty seconds (73° 15' 30") East for one hundred thirty seven and 10/100 (137.10) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for one hundred eighty-five and 61/100 (185.61) feet, chord to said curve bearing South sixty-eight degrees seven minutes fifteen seconds (68° 07' 15") East for one hundred eighty-five and 36/100 (185.36) feet;

Thence South sixty-two degrees fifty-nine minutes (62° 59') East for three hundred eighty-one and 04/100 (381.04) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for six hundred fifteen and 03/100 (615.03) feet; chord to said curve bearing South forty-five degrees fifty-seven minutes thirty-five seconds (45° 57' 35") East for six hundred six and 03/100 (606.03) feet;

Thence South twenty-eight degrees fifty-six minutes ten seconds (28° 56' 10") East for two hundred seventy-five and 50/100 (275.50) feet;

Thence South sixty-one degrees three minutes fifty seconds (61° 03' 50") West for eleven and 25/100 (11.25) feet to a point in the North line of Riverside Drive;

Thence with the North line of said Riverside Drive in a Westerly direction on a curve to the left, with a radius of seven hundred eighty-two and 34/100 (782.34) feet for seven hundred two and 17/100 (702.17) feet, chord to said curve bearing North sixty-four degrees seventeen minutes six seconds (64° 17' 06") West for six hundred seventy-eight and 84/100 (678.84) feet;

Thence continuing with the North line of said Riverside Drive on a tangent bearing North eighty-nine degrees fifty-nine minutes fifty seconds (89° 59' 50") West for seven hundred forty-six and 96/100 (746.96) feet;

Thence continuing with the North line of said Old Riverside Drive in a Westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for three hundred thirty-nine and 02/100 (339.02) feet to the point of beginning, chord to said curve bearing North seventy-seven degrees seventeen minutes thirty-five seconds (77° 17' 35") West for three hundred thirty-six and 25/100 (336.25) feet, and containing 17.740 acres more or less (772,738 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio dated July, 1965 and revised January 6, 1983 Curve distances are measured on the arc.

Excepting therefrom:

The .1595 acre conveyed fur public highway purposes to the Board of County Commissioners of Montgomery County, Ohio by deed no 78-237B05 and being more particularly described as follows:

Located in Section 9, Town 2, Range 6 East, Harrison Township, County of Montgomery, State of Ohio and being a tract of land described as follows:

Beginning at a point in the West line of land conveyed to Lloyd M. Whitesell, et al by deed recorded in microfiche #71-308A:1 in the deed records of Montgomery County, Ohio, said point of beginning also being the North corner of Kingsley Village, section two as recorded in Book 90, Page 143 in the plat records of Montgomery County, Ohio;

| Form 5011639-C (8/1/09) | Page 3 of 4 | SURETY TITLE AGENCY, INC | ALTA Commitment (8-17-06) |
| | | | Ohio - Schedule C |

EXHIBIT E

Thence with the West line of said Kingsley Village, section two, South twenty eight degrees fifty-six minutes ten seconds (28° 56' 10") East for one hundred thirty-three and 55/100 (133 55) feet to an angle in the West line of said Kingsley Village, section two;

Thence South sixty-one degrees three minutes fifty seconds (61° 03' 50") West for eleven and 28/100 (11.28) feet to an angle in the West line of said Kingsley Village, section two, said point being also in the East line of land conveyed to Montgomery County Commissioners by deed recorded in Book 1916, Page 642 in the deed records of Montgomery County, Ohio;

Thence Northwardly with the East line of said Montgomery County Commissioners land on a curve to the left with a radius of seven hundred eighty-two and 34/100 (782.34) feet for three hundred thirty and 18/100 (330 18) feet, tangent to said curve at its point of beginning bearing North thirty-eight degrees thirty-four minutes thirty-six seconds (38° 34' 36") West;

Thence leaving the East line of said Montgomery County Commissioners land, north twenty-four degrees twenty-five minutes six seconds (24° 25' 06") West for eight and 27/100 (8 27) feet;

Thence South sixty-two degrees two minutes forty seconds (62° 02' 40") East for fifteen and 50/100 (15 50) feet;

Thence along a curve to the left with a radius of one thousand three hundred ninety-one and 395/1000 (1,391.395) feet for one hundred twenty and 34/100 (120.34) feet, tangent to said curve at its point of beginning bearing South sixty-two degrees two minutes forty seconds (62° 02' 40") East;

Thence South sixty-seven degrees no minutes no seconds (67° 00' 00") East for eighty-six and 77/100 (86 77) feet to the point of beginning, containing no and 1595/10000 (0 1595) acres, more or less.

**Parcel 4:**

Located in Section 9, Town 2, Range 6 East, Harrison Township, Montgomery County, State of Ohio, and being all of Lot No 1 in the Colony at Forest Parle- Phase III, as recorded in Book 83, Page 25 in the plat records of Montgomery County, Ohio

EXHIBIT F

## MORTGAGE PROMISSORY NOTE

THIS IS A BALLOON MORTGAGE NOTE.  FINAL PAYMENT OR THE BALANCE DUE UPON
MATURITY MAY BE TO THE MAXIMUM AMOUNT OF $3,879,000.00 MILLION PLUS ACCRUED
INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS
OF THE MORTGAGE.

MONTGOMERY COUNTY, OHIO                               October 16, 2012

Concerning the property situated in MONTGOMERY COUNTY, Tennessee with a street address of 4346
Riverside Park Drive, Dayton, Ohio 45405, being more fully described as follows:  **See Exhibit "A"**
("Property").

1. BORROWER'S PROMISE TO PAY
For value received, the undersigned, BARRINGTON SPRING HOUSE LLC, an Ohio limited liability company
(the "Borrower") with a principal place of business at c/o Archer Bay, P.A., 2639 Dr. MLK Street N, St.
Petersburg, FL 33704, promises to pay to Highgate Road Pty Ltd, organized under the laws of Australia,
(the "Lender") whose address is Attn: Kaye, P.O.Box 12900, A'Beckett Street, Melbourne, 8006 AUSTRALIA,
the principal sum of THREE MILLION EIGHT HUNDRED SEVENTY NINE THOUSAND DOLLARS (US
$3,879,000.00) under the terms of this Note or the Mortgage of the same date that secures this Note on or before
December 18, 2014 ("Maturity Date").

2. INTEREST
Interest will be charged on unpaid principal until the full amount of the principal has been paid. The rate of
interest shall be 9% per year.

3. PAYMENT
<u>Balloon Payment</u>. Borrower shall not make installment payments but shall pay the entire amount, including any
Advances owing on or before the Maturity Date.

4. BORROWER'S RIGHT TO PREPAY
Borrower has the right to make payments of principal at any time before they are due.  A payment of principal
only is known as a "prepayment."  If any prepayment is made, BORROWER will advise the LENDER that
such payment is a prepayment.   BORROWER may make a full prepayment or partial prepayment without any
prepayment charge or penalty.  The LENDER will use any prepayments to reduce the amount of principal due
under the Note.  If BORROWER makes a partial prepayment, there will be no changes in the due date unless
LENDER agrees to such in writing.

5. BORROWER'S FAILURE TO PAY AS REQUIRED
   (A)     Default.  If BORROWER does not pay the full amount due on or before the Maturity Date,
   BORROWER will be in default.  Upon default, LENDER may, at LENDER'S sole discretion,
   immediately bring a foreclosure action.
   (C)     NOTICE OF DEFAULT.  If BORROWER is in default, the LENDER may, but is not required
   to, send a written notice to BORROWER requiring BORROWER to pay the overdue amount by a
   certain date.
   (D)     No Waiver by Note Holder.  LENDER does not waive any rights, remedies or causes of action if
   LENDER (i) does not require immediate payment in full as described above or (ii) if LENDER accepts
   any late payment or does not collect any late fee.

*William Clancy*
William Clancy A.M.
*Notary Public*
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
*my appointment is not limited by time*
16 - 10 - 2012

(E)   Payment of LENDER'S Costs and Expenses.   If the BORROWER is in default, the BORROWER shall be responsible for the LENDER'S costs reasonably incurred in collecting the debt, including reasonable attorneys' fees and court costs.

6.   GIVING NOTICE

Any notice must be sent via US Post Office Certified Mail with Return Receipt, and/or Australian Postal Corporation using a similar service, at the addresses of the parties indicated above or at a different address if notice is provided to the other party of any address change.

7.   TRANSFER

If all or any part of the Property or any interest therein is sold or transferred without LENDER'S written consent, LENDER may, at its option, require immediate payment in full of all sums due and owing unless prohibited by law.  LENDER expressly consents to the transfer of the property to LENDER, JMC Memphis LLC or other business entity with which LENDER is associated.  If LENDER exercises this option, LENDER shall give BORROWER notice of acceleration.  The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed pursuant to ¶6, above, within which BORROWER must pay all sums due and owing under this instrument.  If BORROWER fails to pay these sums prior to the expiration of such period, LENDER may invoke any remedies permitted by this instrument without further notice or demand on BORROWER.

9.   LEGAL ACTION

Any legal action brought to enforce the terms of this instrument shall be brought in the venue and jurisdiction nearest the subject real property.

IN WITNESS WHEREOF, BARRINGTON SPRING HOUSE LLC, an Ohio limited liability company, via its authorized signatory Geoffrey Edelsten has executed this agreement as of the *10* day of October 2012.

Barrington Spring House, LLC by

Print Name: Geoffrey Edelsten   *Edelsten*
Circle title:  Manager/Member

NOTARY PUBLIC – ACKNOWLEDGMENT

State of *Victoria*

County of *Australia*

BEFORE ME, the undersigned Notary Public of and for the aforesaid County and State personally appeared *GEOFFREY EDELSTEN*, with whom I am personally acquainted and who upon oath acknowledged and identified himself to be the Manager of Barrington Spring House, LLC a limited liability company organized under the laws of the State of Ohio, and that he as such Manager of the LLC, executed the above instrument as on behalf of the LLC, he being so authorized to do as the free act and deed of the LLC, and for the purposes therein contained.

This the *16* day of October, 2012.

*William Clancy*                    My Commission Expires:
Notary Public
[NOTARY SEAL]



William Clancy A.M.
*Notary Public*
*389 Lonsdale Street*
*Melbourne  3000  Victoria*
*AUSTRALIA*
*my appointment is not limited by time*

**EXHIBIT G**

Type: Mortgages
Kind: MORTGAGE
Recorded: 10/23/2012 3:45:22 PM
Fee Amt: $92.00  Page 1 of 10
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2012-00069384



Prepared by Christian Marcelli, Esq.
Archer Bay, P.A.
2639 Dr. MLK Jr Street N
St. Petersburg, FL 33704

10

## MORTGAGE

This mortgage is made between mortgagor/grantor Barrington Spring House, LLC, an Ohio limited liability company (the "Borrower") with a principal place of business at c/o Archer Bay, P.A., 2639 Dr. MLK Street N, St. Petersburg, FL 33704, and mortgagee/lender Highgate Road Pty Ltd, organized under the laws of Australia, whose address is Attn: Kaye, P.O.Box 12900, A'Beckett Street, Melbourne, 8006 AUSTRALIA.

BORROWER acknowledges and has executed a promissory note of the same date to LENDER in the amount of THREE MILLION EIGHT HUNDRED SEVENTY NINE THOUSAND DOLLARS (US $3,879,000.00) (the "Note"). The unpaid principal balance, plus advances if any, shall be due and payable in full on or before December 18, 2014, ("Maturity Date") as more particularly set forth in the Note. At all times before full repayment of the Note, the outstanding principal balance shall accrue interest at the rate of Nine Percent (9%) per annum from the date of the Note. The Note provides for prepayment, in whole or in part, without penalty.

To secure to LENDER (a) repayment of the indebtedness evidenced by the Note, with interest thereon, and any renewals, extensions or modifications; (b) the repayment of any future Advances, with interest thereon, made by LENDER to BORROWER, if any; and (c) the performance of covenants and agreements of BORROWER contained herein, BORROWER does hereby mortgage, grant, convey and assign to LENDER the real property located in Montgomery County, Ohio with a street address of 4346 Riverside Park Drive, Dayton, Ohio 45405, being more fully described as follows:  **See Exhibit "A"**

TOGETHER with all buildings, improvements, appurtenances and tenements now or hereafter erected on said real property, and all heretofore or hereafter vacated alleys, streets, avenues and ways abutting the property, and all easements, rights, appurtenances, rents, royalties, and profits thereof (herein collectively referred to as the "Property").

BORROWER covenants that BORROWER is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property, that the Property is unencumbered and that BORROWER will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in the schedule of exemptions to coverage in any title insurance policy insuring LENDER'S interest in the Property.

1. PAYMENT OF PRINCIPAL AND INTEREST. BORROWER shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, and any other charges provided in the Note and all other sums secured by this instrument.

2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES. LENDER will not escrow for taxes or

William Clancy A.M.
*Notary Public*
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
*my appointment is not limited by time*
16 · 10. 2012

EXHIBIT G

insurance after the closing date.  BORROWER shall pay these costs directly.  In the event BORROWER fails to pay the annual property taxes by before they are delinquent, the mortgage will be in default.  LENDER shall give BORROWER thirty (30) days notice to cure this default and may then, at LENDER'S option, (i) foreclose the mortgage and/or (ii) pay the taxes themselves, the amount of these taxes being added to the principal outstanding of the loan and drawing interest at the same rate as the remainder of the loan.

3.   APPLICATION OF PAYMENTS.  Unless applicable law provides otherwise, all payments received by LENDER from BORROWER under the Note or this instrument shall be applied by LENDER in the following order of priority:  (i) amounts payable to LENDER under paragraph 2 hereof; (ii) interest payable on the Note; (iii) principal of the Note; (iv) interest payable on any future advances; (v) principal of any future advance; and (vi) any other sums secured by this instrument in such order as LENDER may determine.

4.   CHARGES; LIENS.  BORROWER shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property.  Without LENDER'S written permission, BORROWER shall not allow any lien inferior to this instrument to be perfected against the Property.

5.   HAZARD INSURANCE.  BORROWER shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to the LENDER against loss by wind, fire, lightning, rent loss and such other hazards, casualties, liabilities and contingencies as LENDER shall require and in such amounts and for such periods as LENDER shall require.  Any such requirements by LENDER must be set forth in an addendum to this instrument and duly executed by BORROWER.  All premiums on insurance policies shall be timely paid, and all insurance policies shall include a standard mortgage clause in favor of LENDER.  BORROWER shall provide proof of such insurance, renewals of insurance, and receipts of paid premiums within ten (10) days of demand by LENDER.  In the event of loss, BORROWER shall give immediate written notice to the insurance carrier and LENDER.  BORROWER hereby authorizes LENDER as attorney-in-fact for BORROWER to make proof-of-loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom LENDER'S expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph shall require LENDER to incur any expense or take any action hereunder.  BORROWER further authorizes LENDER to apply the balance of such proceeds to the payment of sums secured by this instrument, whether or not then due, in the order of application set forth in paragraph 3, accounting to the BORROWER for any surplus.  In the vent the BORROWER does not renew any required insurance policy, then LENDER may obtain loss payee insurance coverage only, which cost shall be payable by BORROWER.  Failure to reimburse the LENDER for the cost of this policy within thirty (30) calendar days after being mailed a bill by certified US First Class Mail or Australian equivalent thereof, return receipt requested, shall constitute default under the mortgage.  If the Property is sold or if LENDER acquires title to the Property, LENDER shall have all right, title, and interest of BORROWER in and to such insurance policies and unearned premiums thereon and to the proceeds resulting from any damage to the Property prior to such sale and acquisition.

6.   PROTECTION OF LENDER'S SECURITY.  If BORROWER fails to perform the covenants and agreements contained in this instrument, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of LENDER therein, including but not limited to eminent domain, condemnation, insolvency, or bankruptcy, then LENDER may make such appearances, disburse such sums and take such action as LENDER deems necessary to protect LENDER'S interest, including but not limited to disbursement of attorney's fees, entry upon the Property to make repairs, and procurement of satisfactory insurance as provided herein.

7.   WAIVER NOT RELEASED, FORBEARANCE NOT A WAIVER.  Any extension of time to make a payment, reduction in monthly payments, release of anyone liable hereunder, acceptance of a renewal note, modification of the terms herein, consent to granting any easement or transfer of any interest in the Property, or alteration of the interest rate, or release any portion of the Property from lien shall not affect the obligation of the BORROWER or BORROWER'S assigns to pay sums secured by this instrument and to observe the covenants of the BORROWER stated herein, and shall not affect the lien or priority of lien on the Property.  Any forbearance

*William Clancy*
**William Clancy A.M.**
Notary Public
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
my appointment is not limited by time
16·10·2012

by LENDER in exercising any right or remedy hereunder shall not be a waiver of or preclude the exercise of any right or remedy available to LENDER.

8.   ACCELARATION IN CASE OF BORROWER'S BANKRUPTCY.  If BORROWER shall voluntarily file a petition under the Federal Bankruptcy Act, or under any state bankruptcy or insolvency act, or file an answer in an involuntary insolvency proceeding admitting insolvency in inability to pay debts, or if BORROWER should fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of BORROWER, or if BORROWER shall be adjudged bankrupt, or if a trustee or receiver shall be appointed for BORROWER, or if the Property should become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if BORROWER shall make an assignment for the benefit of BORROWER'S creditors, or if there is an attachment, execution or other judicial seizure of any portion of the BORROWER'S assets and such seizure is not discharged within ten (10) days, then LENDER may declare all the sums secured by this instrument to be immediately due and payable.

9.   TRANSFER OF THE PROPERTY OR BENEFICIAL INTEREST IN BORROWER; ASSUMPTION.  On sale or transfer of (i) all or part of the Property, or any interest therein, or (ii) beneficial interests in BORROWER, LENDER may declare all sums secured by this instrument immediately due and payable and take all reasonable steps to invoke any remedies provided herein.

10.  NOTICE.  Any notice must be sent via US Post Office Certified Mail with Return Receipt, or Australian equivalent thereof, at the addresses of the parties indicated above or at a different address if notice is provided to the other party of any address change.

11.  SUCCESSORS AND ASSIGNS BOUND.  The covenants and agreements herein contained shall bind, and the rights hereunder inure to, the respective successors and assigns of LENDER and BORROWER, subject to the provisions of paragraph 10 herein, All covenants and agreements of BORROWER shall be joint and several.

12.  GOVERNING LAW, SEVERABILITY.  This instrument shall be governed by the law of the jurisdiction in which the Property is situated.  In the event that any provision of this instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this instrument or the Note which can be given effect without the conflicting provisions, and to this end, the provisions of this instrument and the Note are declared to be severable.

13.  ACCELARATION; REMEDIES.  Upon BORROWER'S breach of any covenant or agreement of BORROWER in this instrument, LENDER, at LENDER'S option, declare all of the sums secured by this instrument to be immediately due and payable without further demand unless stated otherwise herein, and may foreclose this instrument by judicial proceeding and may invoke any other remedies permitted by applicable law or provided herein. LENDER shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including but not limited to reasonable attorney's fees, costs of documentary evidence, abstracts and title reports.

14.  RELEASE.  Upon payment of all sums secured by this instrument, LENDER shall release this instrument. BORROWER shall pay LENDER'S reasonable costs incurred in releasing this instrument.

15.  ATTORNEYS' FEES.  In the event that any party institutes legal action, including litigation, to enforce the terms, conditions, promises, covenants and agreements of this instrument or the Note, the prevailing party shall be entitled to reasonable attorneys' fees and costs, and shall include attorneys' fees awarded by an appellate court, if any.

16.  RIDERS.  If one or more riders or addenda are executed by BORROWER and recorded together with this instrument, the covenants and agreement of each such rider or addenda shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument.

*William Clancy*

**William Clancy A.M.**
*Notary Public*
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
*my appointment is not limited by time*

16.10.2012

**17. OHIO COVENANT.** BORROWER and LENDER covenant that Lender is authorized to do all things provided to be done by a mortgagee under section 1311.14 of the Ohio Revised Code.

**18. ASSIGNMENT OF RENTS.** Upon the occurrence of a Default, the LENDER shall have the right without notice and without regard to adequacy of any security for the sums hereby secured and with or without the appointment of a receiver, to enter upon and take possession of the Property, and LENDER may operate, manage, rent, and lease the Property and collect any rents, issues, income and profits therefrom, the same being hereby absolutely assigned and transferred to and for the benefit and protection of the LENDER, contingent only upon the occurrence of an event of Default. All rents collected by LENDER may be applied to the cost of operation, maintenance and repair, and reasonable collection, management and attorneys' fees, and then in reduction of any sums hereby secured in such other proportions as LENDER may determine.

**19. HAZARDOUS SUBSTANCES.** BORROWER shall immediately give LENDER written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law of which BORROWER has actual knowledge. If BORROWER learns, or is notified by any governmental or regulatory authority that removal or remediation of any hazardous substance affecting the Property is necessary, BORROWER shall promptly take all necessary remedial actions in accordance with Environmental Law. "Hazardous substances" are those substances defined as toxic or hazardous by the laws of the State of Ohio or the Federal Government, and include gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides or herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. "Environmental law" is defined as federal, state or local law relating to health, safety and environmental protection.

IN WITNESS WHEREOF, Barrington Spring House LLC, via its authorized signatory Geoffrey Edelsten has executed this agreement as of the _16*_ day of October 2012.

Barrington Spring House LLC, by

Print Name: Geoffrey Edelsten
It's: Manager        _Edelsten_

State of _Victoria_              **ACKNOWLEDGMENT**

County of _Australia_

BEFORE ME, the undersigned Notary Public of and for the aforesaid County and State personally appeared Geoffrey Edelsten, with whom I am personally acquainted and who upon oath acknowledged and identified himself to be the Manager of Barrington Spring House, LLC, a limited liability company organized under the laws of the State of Ohio, and that he as such Manager of the LLC, executed the above instrument as on behalf of the LLC, he being so authorized to do as the free act and deed of the LLC, and for the purposes therein contained. This the _16*_ day of October, 2012.

_William Clancy_
Notary Public
[NOTARY SEAL]            My Commission Exp...

**William Clancy A.M.**
*Notary Public*
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
*my appointment is not limited by time*

**EXHIBIT G**

## MORTGAGE PROMISSORY NOTE

THIS IS A BALLOON MORTGAGE NOTE. FINAL PAYMENT OR THE BALANCE DUE UPON MATURITY MAY BE TO THE MAXIMUM AMOUNT OF $3,879,000.00 MILLION PLUS ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THE MORTGAGE.

MONTGOMERY COUNTY, OHIO                    October_16_, 2012

Concerning the property situated in MONTGOMERY COUNTY, Tennessee with a street address of 4346 Riverside Park Drive, Dayton, Ohio 45405, being more fully described as follows:   **See Exhibit "A"** ("Property").

   1.   BORROWER'S PROMISE TO PAY
For value received, the undersigned, BARRINGTON SPRING HOUSE LLC, an Ohio limited liability company (the "Borrower") with a principal place of business at c/o Archer Bay, P.A., 2639 Dr. MLK Street N, St. Petersburg, FL 33704, promises to pay to Highgate Road Pty Ltd, organized under the laws of Australia, (the "Lender") whose address is Attn: Kaye, P.O.Box 12900, A'Beckett Street, Melbourne, 8006 AUSTRALIA, the principal sum of THREE MILLION EIGHT HUNDRED SEVENTY NINE THOUSAND DOLLARS (US $3,879,000.00) under the terms of this Note or the Mortgage of the same date that secures this Note on or before December 18, 2014 ("Maturity Date").

   2.   INTEREST
Interest will be charged on unpaid principal until the full amount of the principal has been paid. The rate of interest shall be 9% per year.

   3.   PAYMENT
Balloon Payment. Borrower shall not make installment payments but shall pay the entire amount, including any Advances owing on or before the Maturity Date.

   4.   BORROWER'S RIGHT TO PREPAY
Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." If any prepayment is made, BORROWER will advise the LENDER that such payment is a prepayment. BORROWER may make a full prepayment or partial prepayment without any prepayment charge or penalty. The LENDER will use any prepayments to reduce the amount of principal due under the Note. If BORROWER makes a partial prepayment, there will be no changes in the due date unless LENDER agrees to such in writing.

   5.   BORROWER'S FAILURE TO PAY AS REQUIRED
      (A)     Default. If BORROWER does not pay the full amount due on or before the Maturity Date, BORROWER will be in default. Upon default, LENDER may, at LENDER'S sole discretion, immediately bring a foreclosure action.
      (C)     NOTICE OF DEFAULT. If BORROWER is in default, the LENDER may, but is not required to, send a written notice to BORROWER requiring BORROWER to pay the overdue amount by a certain date.
      (D)     No Waiver by Note Holder. LENDER does not waive any rights, remedies or causes of action if LENDER (i) does not require immediate payment in full as described above or (ii) if LENDER accepts any late payment or does not collect any late fee.

*William Clancy*
William Clancy A.M.
*Notary Public*
389 Lonsdale Street
Melbourne 3000 Victoria
AUSTRALIA
*my appointment is not limited by time*
16 - 10 - 2012

EXHIBIT G

(E)   Payment of LENDER'S Costs and Expenses.   If the BORROWER is in default, the BORROWER shall be responsible for the LENDER'S costs reasonably incurred in collecting the debt, including reasonable attorneys' fees and court costs.

6.   GIVING NOTICE

Any notice must be sent via US Post Office Certified Mail with Return Receipt, and/or Australian Postal Corporation using a similar service, at the addresses of the parties indicated above or at a different address if notice is provided to the other party of any address change.

7.   TRANSFER

If all or any part of the Property or any interest therein is sold or transferred without LENDER'S written consent, LENDER may, at its option, require immediate payment in full of all sums due and owing unless prohibited by law.  LENDER expressly consents to the transfer of the property to LENDER, JMC Memphis LLC or other business entity with which LENDER is associated.  If LENDER exercises this option, LENDER shall give BORROWER notice of acceleration.  The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed pursuant to ¶6, above, within which BORROWER must pay all sums due and owing under this instrument.  If BORROWER fails to pay these sums prior to the expiration of such period, LENDER may invoke any remedies permitted by this instrument without further notice or demand on BORROWER.

9.   LEGAL ACTION

Any legal action brought to enforce the terms of this instrument shall be brought in the venue and jurisdiction nearest the subject real property.

IN WITNESS WHEREOF, BARRINGTON SPRING HOUSE LLC, an Ohio limited liability company, via its authorized signatory Geoffrey Edelsten has executed this agreement as of the _10ᵗʰ_ day of October 2012.

Barrington Spring House, LLC by

Print Name: Geoffrey Edelsten 
Circle title:  Manager/Member

NOTARY PUBLIC - ACKNOWLEDGMENT

State of _Victoria_

County of _Australia_

BEFORE ME, the undersigned Notary Public of and for the aforesaid County and State personally appeared _GEOFFREY EDELSTEN_, with whom I am personally acquainted and who upon oath acknowledged and identified himself to be the Manager of Barrington Spring House, LLC a limited liability company organized under the laws of the State of Ohio, and that he as such Manager of the LLC, executed the above instrument as on behalf of the LLC, he being so authorized to do as the free act and deed of the LLC, and for the purposes therein contained.

This the _16_ day of October, 2012.

_William Clancy_                    My Commission Expires:
Notary Public
[NOTARY SEAL]                    **William Clancy A.M.**
                                 *Notary Public*
                                 *389 Lonsdale Street*
                                 *Melbourne  3000  Victoria*
                                 *AUSTRALIA*
                                 *my appointment is not limited by time*

**EXHIBIT G**

## Exhibit A: Legal Description:

### Auditor's Parcel No. E21 8-17,146 (Phase I-5.880 acres)

**Parcel I:**

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the northeast line of Riverside Drive as recorded in book 71, page 70 in the plat records of Montgomery county, Ohio with the east line of said section 8; thence with the northeast line of said Riverside Drive in a north westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (768.48) feet for one hundred fifty-four and 64/100 (154.64) feet; thence continuing with the northeast line of said Riverside Drive on a tangent to said curve bearing north fifty-three degrees zero minutes (53° 00') west for four hundred twenty-two and 81/100 (422.82) feet; thence continuing with the northeast line of said Riverside Drive in a northwesterly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for four hundred fifty and 39/100 (450.39) feet; thence continuing with the northeast line of said Riverside Drive on a tangent to the last mentioned curve bearing north nineteen degrees fourteen minutes forty seconds (19° 14' 40") west for twenty-one and 02/100 (21.02) feet to a point in the original centerline of Shoup Mill Road: thence with the original centerline of said Shoup Mill Road, north seventy-five degrees forty-seven minutes fifty seconds (79° 47' 50") east for forty-nine and 15/100 (49.15) feet; thence south three degrees thirty-four minutes ten seconds (3° 34' 10") west for seventy-five and 00/100 (75.00) feet: thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for two hundred seventy-five and 00/100 (275.00) feet; thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for thirty-six and 50/100 (36.50) feet; thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for two hundred forty-one and 00/100 (241.00) feet; thence north three degrees thirty-four minutes ten seconds (3° 34' 10") east for thirty-six and 50/100 (36.50) feet; thence south eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") east for one hundred eighty-five and 00/100 (185.00) feet to a point in the east line of said section 8; thence with the east line of said section 8, south zero degrees twenty-four minutes twenty seconds (00° 24' 20") west for six hundred six and 43/100 (606.43) feet to the point of beginning, containing 5.880 acres (256,120 square feet) more or less, according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

### Auditor's Parcel No. E20-10-8-147 (Phase I-5.3180 acres):

**Parcel II:**

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at a point in the west line of Forest Park Drive at its southernmost corner as recorded in book 71, page 70 in the plat records of Montgomery County, Ohio said point being in a north line of land conveyed to NRET, Interim, Inc. by deed recorded in micro 80-534E01 in the deed

**EXHIBIT G**

### Exhibit A:  Legal Description:

records of Montgomery County, Ohio; thence with the north line of said NRET, Interim, Inc. Land, north forty degrees zero minutes (40° 00') west for three hundred thirty-two and 24/100 (332.24) feet to a corner of land conveyed to the Board of Education of the Dayton School District by deed recorded in book 1829 page 297 in the deed records of Montgomery County, Ohio; thence north forty-four degrees four minutes forty seconds (44° 04' 40") east for six hundred seventy-two and 37/100 (672.37) feet to a point in the south line of Riverside Drive; thence with the south line of said Riverside Drive, south fifty-three degrees zero minutes (53° 00') east for two hundred seventeen and 55/100 (217.55) feet; thence continuing with the south line of said Riverside Drive in an easterly direction on a curve to the left, with a radius of eight hundred thirty-four and 48/100 (834.48) feet for thirty-two and 00/100 (32.00) feet, tangent to said curve at its beginning being last mentioned bearing; thence in a southerly direction on a curve to the right, with a radius of twenty and 00/100 (20.00) feet for thirty and 25/100 (30.25) feet to a point in the west line of said Forest Park Drive; thence with the west line of said Forest Park Drive on a tangent to last mentioned curve bearing south thirty-one degrees twenty-six minutes fifty seconds (31° 26' 50") west for two hundred ninety-six and 72/100 (296.72) feet; thence continuing with the west line of said Forest Park Drive in a direction on a curve to the right with a radius of seven hundred sixty-nine and 48/100 (769.48) feet for two hundred forty-nine and 16/100 (249.16) feet, tangent to said curve at its beginning being last mentioned bearing; thence with the west line of said Forest Park Drive on a tangent to last mentioned curve bearing south fifty degrees zero minutes (50° 00') west for one hundred eighty-six and 45/100 (186.45) feet to the point of beginning, containing 5.318 acres more or less (231,668 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

### Auditor's Parcel No. E20-10-9-112, 113 (Phase II):

Located in Section 9, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the west line of said section 9, with the north line of Riverside Drive as recorded in book 75 page 68 in the plat records of Montgomery County, Ohio; thence with the west line of section 9, north zero degrees twenty four minutes twenty seconds (00° 24' 20") east for five hundred seventy-six and 39/100 (576.39) feet to a point in the south line of Old Riverside Drive as dedicated in book 75 page 68 in the plat records of Montgomery County, Ohio; thence with the south line of said Old Riverside Drive, south eighty-six degrees thirty-four minutes thirty seconds (86° 34' 30") east for seventy-three and 25/100 (73.25) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve to the left, with a radius of one thousand and 00/100 (1,000.00) feet for forty-three and 63/100 (43.63) feet, chord to said curve bearing south eighty-seven degrees forty-nine minutes thirty seconds (87° 49' 30") east for forty-three and 63/100 (43.63) feet; thence continuing with the south line of said Old Riverside Drive on a tangent bearing south eighty-nine degrees four minutes thirty seconds (89° 04' 30") east for forty-one and 71/100 (41.71) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve to the right, with a radius of forty-five and 00/100 (45.00) feet for thirty-nine and 73/100 (49.73) feet, chord to said

EXHIBIT G

### Exhibit A:  Legal Description:

curve bearing south sixty-three degrees forty-seven minutes (63° 47') east for thirty-eight and 45/100 (38.45) feet; thence continuing with the south line of said Old Riverside Drive in an easterly direction on a curve  to the left with a radius of forty-five and 00/100 feet (45.00) for ninety and 75/100 (90.75) feet; chord to said curve bearing north eighty-three degrees forty-four minutes ten seconds (83° 44' 10") east for seventy-six and 13/100 (76.13) feet; thence continuing with the south line of said Old Riverside Drive, south eighty-three degrees thirty minutes thirty seconds (83° 30' 30") east for two and 57/100 (2.57) feet to the eastern terminus of said Old Riverside Drive; thence with the east line of said Old Riverside Drive, north six degrees twenty-nine minutes thirty seconds (6° 29' 30") east for sixty-five and 06/100 (65.06) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand three hundred sixty-two and 55/100 (1,362.55) feet for two hundred seven and 16/100 (207.16) feet, chord to said curve bearing south seventy-seven degrees thirty-six minutes fifty seconds (77° 36' 50") east for two hundred six and 96/100 (206.96) feet; thence south seventy-three degrees fifteen minutes thirty seconds (73° 15' 30") east for one hundred thirty- seven and 10/100 (137.10) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for one hundred eighty-five and 61/100 (185.61) feet, chord to said curve bearing south sixty-eight degrees seven minutes fifteen seconds (68° 07' 15") east for one hundred eighty-five and 36/100 (185.36) feet; thence south sixty-two degrees fifty-nine minutes (62° 59') east for three hundred eighty-one and 04/100 (381.04) feet; thence in an easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for six hundred fifteen and 03/100 (615.03) feet; chord to said curve bearing south forty-five degrees fifty-seven minutes thirty-five seconds (45° 57' 35") east for six hundred six and 03/100 (606.03) feet; thence south twenty-eight degrees fifty-six minutes ten seconds (28° 56' 10") east for two hundred seventy-five and 50/100 (275.50) feet; thence south sixty-one degrees three minutes fifty seconds (61° 03' 50") west for eleven and 25/100 (11.25) feet to a point in the north line of Riverside Drive; thence with the north line of said Riverside Drive in a westerly direction on a curve to the left, with a radius of seven hundred eighty-two and 34/100 (782.34) feet for seven hundred two and 17/100 (702.17) feet, chord to said curve bearing north sixty-four degrees seventeen minutes six seconds (64° 17' 06") west for six hundred seventy-eight and 84/100 (678.84) feet; thence continuing with the north line of said Riverside Drive on a target bearing north eighty-nine degrees fifty-nine minutes fifty seconds (89° 59' 50") west for seven hundred forty-six and 96/100 (746.96) feet; thence continuing with the north line of said Old Riverside Drive in a westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for three hundred thirty-nine and 02/100 (339.02) feet to the point of beginning, chord to said curve bearing north seventy-seven degrees seventeen minutes thirty-five seconds (77° 17' 35") west for three hundred thirty-six and 25/100 (336.25) feet, and containing 17,740 acres more or less (772,738 squared feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio dated July, 1965 and revised January 6, 1983. Curve distances are measured on the arc.

Excepting therefrom:

**EXHIBIT G**

### Exhibit A: Legal Description:

The .1595 acre conveyed for public highway purposes to the Board of County Commissioners of Montgomery County, Ohio by deed no. 78-237B05 and being more particularly described as follows:

Located in Section 9, Town 2, Range 6 East, Harrison Township, County of Montgomery, State of Ohio and being a tract of land described as follows:

~~Beginning at a point in the west line of land conveyed to Lloyd M. Whitesell, et al by deed~~ recorded in microfiche #71-308All in the deed records of Montgomery County, Ohio, said point of beginning also being the north corner of Kingsley Village, section two as recorded in book 90, page 143 in the plat records of Montgomery County, Ohio; thence with the west line of said Kingsley Village, section two, south twenty- eight degrees fifty- six minutes ten seconds (28° 56' 10") east for one hundred thirty-three and 55/100 (133.55) feet to an angle in the west line of said Kingsley Village, section two; thence south sixty-one degrees three minutes fifty seconds (61° 03' 50") west for eleven and 28/100 (11.28) feet to an angle in the west line of said Kingsley Village, section two, said point being also in the east line of land conveyed to Montgomery County Commissioners by deed recorded in book 1916, page 642 in the deed records of Montgomery County, Ohio; thence northwardly with the east line of said Montgomery County Commissioners land on a curve to the left with a radius of seven hundred eighty-two and ~~34/100 (782.34) feet for three hundred thirty and 18/100 (330.18) feet, tangent to said curve at its~~ point of beginning bearing north thirty-eight degrees thirty-four minutes thirty-six seconds (38° 34' 36") west; thence leaving the east line of said Montgomery County Commissioners land, north twenty-four degrees twenty-five minutes six seconds (24° 25' 06") west for eight and 27/100 (8.27) feet; thence south sixty-two degrees two minutes forty seconds (62° 02' 40") east for fifteen and 50/100 (15.50) feet; thence along a curve to the left with a radius of one thousand three hundred ninety-one and 395/1000 (1,391.395) feet for one hundred twenty and 34/100 (120.34) feet; tangent to said curve at its point of beginning bearing south sixty-two degrees two ~~minutes forty seconds (62° 02' 40") east, thence south sixty-seven degrees no minutes no~~ seconds (67° 00' 00") east for eighty-six and 77/100 (86.77) feet to the point of beginning, containing no and 1595/10000 (0.1595) acres, more or less.

**Auditor's Parcel No. E20-181-9-1 (Phase III):**

Located in Section 9, Town 2, Range 6 East, Harrison Township, Montgomery County, State of Ohio, and being all of Lot No. 1 in the Colony at Forest Parle- Phase III, as recorded in book 83, page 25 in the plat records of Montgomery County, Ohio.

<u>Commonly Known as:</u> 4346 Riverside Drive, Dayton, OH 45405

Tax Parcel Nos:   E20-10-8-17, 146
                  E20-10-8-147
                  E20-10-9-112, 113
                  E20-181-9-1

Prior Deed Reference:  Instrument No. 08-49735

## CONSENT AND SUBORDINATION

THIS CONSENT AND SUBORDINATION (this "Subordination") is made and executed this _31_ day of _DECember_, _2013_, by **HIGHGATE ROAD PTY LTD** **("Highgate")**, organized under the laws of Australia, whose address is Attn: Kaye, P.O. Box 12900, A'Beckett Street, Melbourne, 8006 AUSTRALIA.

### Recitals

A. Highgate is the holder of a Promissory Note secured by a Mortgage dated October 16, 2012, and filed on October 23, 2012, in instrument 12-069384, as recorded in the Recorders Office of Montgomery County, Ohio **(the "Highgate Mortgage")** on certain real property more particularly described in **Exhibit A** attached hereto **(the "Property")**.

B. Barrington Spring House, LLC, an Ohio limited liability company **("Barrington")**, granted the Highgate Mortgage to Highgate and is the current owner of the Property.

C. Issac Keith Mawardi, Limor Mawardi and Rafael Mawardi, jointly and severally **(collectively the "Lender")**, are extending a loan **(the "Loan")** to Barrington in the amount of Three Million Five Hundred Thousand Dollars **($3,500,000.000)**. The Loan is evidenced by a Promissory Note from Barrington to the Lender dated as of September 10, 2013, in the amount of $3,500,000.00 and is secured by a Mortgage dated December 30, 2013 **(the "Mawardi Mortgage")** executed by Barrington for the benefit of the Lender, which will be recorded in the office of the Recorders Office of Montgomery County, Ohio.

### Subordination

Highgate hereby consents to the Mawardi Mortgage granted to the Lender pursuant to that certain Settlement Agreement executed on or about September 10, 2013, by the Lender and Geoffrey W. Edelsten on behalf of Barrington, and Highgate hereby subordinates its interest in the Property to the Highgate Mortgage with the same force and

Type: Mortgages
Kind: SUBORDINATION OF MORTGAGE
Recorded: 1/6/2014 3:51:52 PM
Fee Amt: $80.00  Page 1 of 6
Montgomery County, OH
Willis E. Blackshear Recorder

File# 2014-00000735

(Page 1 of 2)

as though the Mawardi Mortgage were entered into and recorded prior to the execution and recordation of the Highgate Mortgage.

EXECUTED this *31* day of *December 2013* _____, _____.

### HIGHGATE ROAD PTY LTD

By: *Hosking*

Print name: *Lindsay Lawrence Hosking*

Print title: *Sole director /Shareholder*

### ACKNOWLEDGEMENT

*HUGH JOHN PEARCE* of *LEVEL 13, 200 QUEEN ST, MELBOURNE VICTORIA 3000* of Australia

Before me, the undersigned, *NOTARY PUBLIC*, of and for the aforesaid jurisdiction, duly commissioned and qualified, personally appeared *LINDSAY LAWRENCE HOSKING*, with whom I am personally acquainted and who upon oath acknowledged and executed the above instrument on behalf of the Highgate Road Pty Ltd, having been authorized to do so as his free act and deed and for the purposes therein contained, the said individual having provided sufficient evidence of identity and of authority to act on such behalf to me.

This the *31* day of *DECEMBER*, *2013*.

_____   My Commission Expires:_____
Notary Public

**HUGH JOHN PEARCE**
NOTARY PUBLIC
Level 13, 200 Queen Street MELBOURNE
3000, VICTORIA, AUSTRALIA
My appointment is not limited by time

(page 2 of 2)

EXHIBIT H

## EXHIBIT A
### (Legal Description)

**Parcel 1:**

Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the Northeast line of Riverside Drive as recorded in Book 71, Page 70 in the plat records of Montgomery County, Ohio with the East line of said section 8;

Thence with the Northeast line of said Riverside Drive in a North Westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for one hundred fifty-four and 64/100 (154.64) feet;

Thence continuing with the Northeast line of said Riverside Drive on a tangent to said curve bearing North fifty-three degrees zero minutes (53° 00') West for four hundred twenty-two and 81/100 (422.81) feet;

Thence continuing with the Northeast line of said Riverside Drive in a Northwesterly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for four hundred fifty and 39/100 (450.39) feet;

Thence continuing with the Northeast line of said Riverside Drive on a tangent to the last mentioned curve bearing north nineteen degrees fourteen minutes forty seconds (19° 14' 40") West for twenty-one and 02/100 (21.02) feet to a point in the original centerline of Shoup Mill Road;

Thence with the original centerline of said Shoup Mill Road, North seventy-five degrees forty-seven minutes fifty seconds (75° 47' 50") East for forty-nine and 15/100 (49.15) feet;

Thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for seventy-five and 00/100 (75.00) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for two hundred seventy-five and 00/100 (275.00) feet;

Thence South three degrees thirty-four minutes ten seconds (3° 34' 10") West for thirty-six and 50/100 (36.50) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for two hundred forty-one and 00/100 (241.00) feet;

Thence North three degrees thirty-four minutes ten seconds (3° 34' 10") East for thirty-six and 50/100 (36.50) feet;

Thence South eighty-six degrees twenty-five minutes fifty seconds (86° 25' 50") East for one hundred eighty-five and 00/100 (185.00) feet to a point in the East line of said section 8;

Thence with the East line of said section 8, South zero degrees twenty-four minutes twenty seconds (00° 24' 20") West for six hundred six and 43/100 (606.43) feet to the point of beginning containing 5.880 acres, (256,120 square feet), more or less, according to a survey of said premises by A Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc

**Parcel 2:**
Located in Section 8, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

| Form 5011839-C (8/1/00) | Page 1 of 4 | SURETY TITLE AGENCY, INC | ALTA Commitment (6-17-06)<br>Ohio - Schedule C |

Beginning at a point in the West line of Forest Park Drive at its Southernmost corner as recorded in Book 71, Page 70 in the plat records of Montgomery County, Ohio said point being in a North line of land conveyed to NRET, Interim, Inc. by deed recorded in micro 80-534E01 in the deed records of Montgomery County, Ohio;

Thence with the North line of said NRET, Interim, Inc. Land, North forty degrees zero minutes (40° 00') West for three hundred thirty-two and 24/100 (332.24) feet to a corner of land conveyed to the Board of Education of the Dayton School District by deed recorded in Book 1829 Page 297 in the deed records of Montgomery County, Ohio;

Thence North forty-four degrees four minutes forty seconds (44° 04' 40") East for six hundred seventy-two and 37/100 (672.37) feet to a point in the South line of Riverside Drive;

Thence with the South line of said Riverside Drive. South fifty-three degrees zero minutes (53° 00') East for two hundred seventeen and 55/100 (217.55) feet;

Thence continuing with the South line of said Riverside Drive in an Easterly direction on a curve to the left, with a radius of eight hundred thirty-four and 48/100 (834.48) feet for thirty two and 00/100 (32.00) feet, tangent to said curve at its beginning being last mentioned bearing;

Thence in a Southerly direction on a curve to the right, with a radius of twenty and 00/100 (20.00) feet for thirty and 25/100 (30.25) feet to a point in the West line of said Forest Park Drive;

Thence with the West line of said Forest Park Drive on a tangent to last mentioned curve bearing South thirty one degrees twenty-six minutes fifty seconds (31° 26' 50") West for two hundred ninety-six and 72/100 (296.72) feet;

Thence continuing with the West line of said Forest Park Drive in a Southerly direction on a curve to the right with a radius of seven hundred sixty-nine and 48/100 (769.48) feet for two hundred forty-nine and 16/100 (249.16) feet, tangent to said curve at its beginning being last mentioned bearing;

Thence with the West line of said Forest Park Drive on a tangent to last mentioned curve bearing South fifty degrees zero minutes (50° 00') West for one hundred eighty-six and 45/100 (186.45) feet to the point of beginning, containing 6.318 acres more or less (231,868 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio, dated April 10, 1964 and revised January 6, 1983. Curve distances are measured on the arc.

**Parcel 3**

Located in Section 9, Town 2, Range 6E, Harrison Township, County of Montgomery, State of Ohio, and being a tract of land described as follows:

Beginning at the intersection of the West line of said section 9, with the North line of Riverside Drive as recorded in Book 75 Page 68 in the plat records of Montgomery County, Ohio;

Thence with the West line of said section 9, North zero degrees twenty-four minutes twenty seconds (00° 24' 20") East for five hundred seventy-six and 39/100 (576.39) feet to a point in the South line of Old Riverside Drive as dedicated in Book 75 Page 68 in the plat records of Montgomery County, Ohio;

Thence with the South line of said Old Riverside Drive, South eighty-six degrees thirty-four minutes thirty seconds (86° 34' 30") East for seventy-three and 25/100 (73.25) feet;

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the left, with a radius of one thousand and 00/100 (1,000.00) feet for forty-three and 63/100 (43.63) feet, chord to said curve bearing South eighty-seven degrees forty-nine minutes thirty seconds (87° 49' 30") East for forty-three and 63/100 (43.63) feet;

Thence continuing with the South line of said Old Riverside Drive on a tangent bearing South eighty-nine degrees four minutes thirty seconds (89° 04' 30") East for forty-one and 71/100 (41.71) feet;

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the right, with a radius of forty-five and 00/100 (45.00) feet for thirty-nine and 73/100 feet, chord to said curve bearing South sixty-three degrees forty-seven minutes (63° 47') East for thirty-eight and 45/100 (38.45) feet;

| Form 5011639-C (8/1/09) | Page 2 of 4 | SURETY TITLE AGENCY INC. | ALTA Commitment (6-17-06) |
| | | | Ohio - Schedule C |

Thence continuing with the South line of said Old Riverside Drive in an Easterly direction on a curve to the left, with a radius of forty-five and 00/100 feet (45.00) for ninety and 75/100 (90.75) feet; chord to said curve bearing North eighty-three degrees forty-four minutes ten seconds (83° 44' 10") East for seventy-six and 13/100 (76.13) feet;

Thence continuing with the South line of said Old Riverside Drive, South eighty-three degrees thirty minutes thirty seconds (83° 30' 30") East for two and 57/100 (2.57) feet to the Eastern terminus of said Old Riverside Drive;

Thence with the East line of said Old Riverside Drive, North six degrees twenty-nine minutes thirty seconds (6° 29' 30') East for sixty-five and 06/100 (65.06) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand three hundred sixty-two and 55/100 (1,362.55) feet for two hundred seven and 18/100 (207.18) feet, chord to said curve bearing South seventy-seven degrees thirty-six minutes fifty seconds (77° 36' 50") East for two hundred six and 96/100 (206.96) feet;

Thence South seventy-three degrees fifteen minutes thirty seconds (73° 15' 30") East for one hundred thirty seven and 10/100 (137.10) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for one hundred eighty-five and 61/100 (185.61) feet, chord to said curve bearing South sixty-eight degrees seven minutes fifteen seconds (68° 07' 15") East for one hundred eighty-five and 36/100 (185.36) feet;

Thence South sixty-two degrees fifty-nine minutes (62° 59') East for three hundred eighty-one and 04/100 (381.04) feet;

Thence in an Easterly direction on a curve to the right, with a radius of one thousand thirty-five and 00/100 (1,035.00) feet for six hundred fifteen and 03/100 (615.03) feet; chord to said curve bearing South forty-five degrees fifty-seven minutes thirty-five seconds (45° 57' 35") East for six hundred six and 03/100 (606.03) feet;

Thence South twenty-eight degrees fifty-six minutes ten seconds (28° 56' 10") East for two hundred seventy-five and 50/100 (275.50) feet;

Thence South sixty-one degrees three minutes fifty seconds (61° 03' 50") West for eleven and 25/100 (11.25) feet to a point in the North line of Riverside Drive;

Thence with the North line of said Riverside Drive in a Westerly direction on a curve to the left, with a radius of seven hundred eighty-two and 34/100 (782.34) feet for seven hundred two and 17/100 (702.17) feet, chord to said curve bearing North sixty-four degrees seventeen minutes six seconds (64° 17' 06") West for six hundred seventy-eight and 84/100 (678.84) feet;

Thence continuing with the North line of said Riverside Drive on a tangent bearing North eighty-nine degrees fifty-nine minutes fifty seconds (89° 59' 50") West for seven hundred forty-six and 96/100 (746.96) feet;

Thence continuing with the North line of said Old Riverside Drive in a Westerly direction on a curve to the right, with a radius of seven hundred sixty-four and 48/100 (764.48) feet for three hundred thirty-nine and 02/100 (339.02) feet to the point of beginning, chord to said curve bearing North seventy-seven degrees seventeen minutes thirty-five seconds (77° 17' 35") West for three hundred thirty-six and 25/100 (336.25) feet, and containing 17.740 acres more or less (772,738 square feet), according to a survey of said premises by A. Bodenstein, registered surveyor, State of Ohio dated July, 1965 and revised January 6, 1983 Curve distances are measured on the arc.

Excepting therefrom:

The .1595 acre conveyed for public highway purposes to the Board of County Commissioners of Montgomery County, Ohio by deed no 78-237B05 and being more particularly described as follows:

Located in Section 9, Town 2, Range 8 East, Harrison Township, County of Montgomery, State of Ohio and being a tract of land described as follows:

Beginning at a point in the West line of land conveyed to Lloyd M Whitesell, et al by deed recorded in microfiche #71-308A11 in the deed records of Montgomery County, Ohio, said point of beginning also being the North corner of Kingsley Village, section two as recorded in Book 90, Page 143 in the plat records of Montgomery County, Ohio;

| Form 5011639-C (8/1/06) | Page 3 of 4 | SURETY TITLE AGENCY, INC | ALTA Commitment (6-17-06) |
| | | | Ohio - Schedule C |

Thence with the West line of said Kingsley Village, section two, South twenty eight degrees fifty-six minutes ten seconds (28° 56' 10") East for one hundred thirty-three and 55/100 (133 55) feet to an angle in the West line of said Kingsley Village, section two;

Thence South sixty-one degrees three minutes fifty seconds (61° 03' 50") West for eleven and 28/100 (11.28) feet to an angle in the West line of said Kingsley Village, section two, said point being also in the East line of land conveyed to Montgomery County Commissioners by deed recorded in Book 1916, Page 642 in the deed records of Montgomery County, Ohio;

Thence Northwardly with the East line of said Montgomery County Commissioners land on a curve to the left with a radius of seven hundred eighty-two and 34/100 (782.34) feet for three hundred thirty and 18/100 (330 18) feet, tangent to said curve at its point of beginning bearing North thirty-eight degrees thirty-four minutes thirty-six seconds (38° 34' 36") West;

Thence leaving the East line of said Montgomery County Commissioners land, north twenty-four degrees twenty-five minutes six seconds (24° 25' 06") West for eight and 27/100 (8 27) feet;

Thence South sixty-two degrees two minutes forty seconds (62° 02' 40") East for fifteen and 50/100 (15 50) feet;

Thence along a curve to the left with a radius of one thousand three hundred ninety-one and 395/1000 (1,391.395) feet for one hundred twenty and 34/100 (120.34) feet, tangent to said curve at its point of beginning bearing South sixty-two degrees two minutes forty seconds (62° 02' 40") East;

Thence South sixty-seven degrees no minutes no seconds (67° 00' 00") East for eighty-six and 77/100 (86 77) feet to the point of beginning, containing no and 1595/10000 (0 1595) acres, more or less.

**Parcel 4:**

Located in Section 9, Town 2, Range 6 East, Harrison Township, Montgomery County, State of Ohio, and being all of Lot No 1 in the Colony at Forest Parle- Phase III, as recorded in Book 83, Page 25 in the plat records of Montgomery County, Ohio

# EXHIBIT I
# PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 14-30054 |
| Barrington Spring House, LLC | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Walter |

## ORDER MOTION BY DEBTOR FOR AN ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL REGARDING THE UNPERFECTED SECURITY INTERESTS OF (A) RAFAEL, ISAAC KEITH AND LIMOR MAWARDI AND (B) HIGHGATE ROAD PTY, LTD.; (2) AUTHORIZING THE CONTINUING USE OF CASH COLLATERAL; AND (3) GRANTING ADEQUATE PROTECTION (DOC. _____)

This matter comes before the Court on the *Motion by Debtor for an Order (1) Authorizing the Interim Use of Cash Collateral Regarding the Unperfected Security Interests of (A) Rafael, Isaac Keith, and Limor Mawardi and (B) Highgate Road Pty, Ltd.; (2) Authorizing the Continuing Use of Cash Collateral; and (3) Granting Adequate Protection* (the "Motion") (Doc. _____), filed on January 13, 2014, by Barrington Spring House, LLC, the Debtor and Debtor in Possession (the "Debtor"). Through the Motion, the Debtor seeks an Order pursuant to 11 U.S.C. §§ 361, 362, 363, 507(b) and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2, as follows:

1.      authorizing the Debtor to use cash collateral (the "Cash Collateral") on an interim basis regarding the unperfected mortgage security interest (the "Unperfected Security Interest") held by (a) Rafael, Isaac Keith and Limor Mawardi (the "Mawardis) and (b) Highgate Road Pty, Ltd. ("Highgate") in the rents derived from the Debtor's real estate (the "Collateral");

2.      authorizing the Debtor, after expiration of the interim and notice period without objection, to use cash collateral on a continuing basis regarding the Unperfected Security Interests; and

3.      granting adequate protection to the Mawardis and to Highgate regarding their Unperfected Security Interests.

The Debtor desires to use Cash Collateral to fund payment of normal ordinary course post-petition operating expenses of the Debtor and those obligations of the Debtor which may be paid after Court approval.

The Debtor requested an expedited hearing on the Motion (the "Expedited Hearing Motion") (Doc. ___), and the matter came before the Court for consideration on an expedited basis on _____, 2014 (the "Expedited Hearing").  At the Expedited Hearing, counsel for the Debtor offered evidence of service of notice of the Motion and the Expedited Hearing Motion.  As such, the Court deemed it appropriate to hear the Motion and consider the requests of the Debtor.

Based on the matters contained in the Motion, and those matters before the Court at the Expedited Hearing, the Court finds the Motion to be well-taken and it is hereby approved.  The Court finds that it is necessary for the Debtor to use the Cash Collateral for the operations of the Debtor to be successful and for the Debtor to maintain the value of its assets.  Further, the Court

finds that the proposed adequate protection to the Mawardis and to Highgate is consistent with

11 U.S.C. § 361 and is fair and reasonable under the current circumstances.

It is therefore ORDERED and DECREED that the Motion be, and it hereby is, granted,

and that the Debtor may, until the expiration of this Order or until the violation of a condition

hereunder, use the Cash Collateral related to the Unperfected Security Interests of the Mawardis

and Highgate on the following terms and conditions:

1.      The Debtor is authorized to use the Cash Collateral for the following purposes:

A.      The payment of normal ordinary course post-petition operating expenses

of the Debtor;

B.      The payment of any pre-petition obligation of the Debtor or any non-

ordinary course of business obligation of the Debtor approved by the Bankruptcy Court

after proper notice and opportunity for a hearing;

C.      Any Court-authorized fees or expenses of the Debtor's professionals; and

D.      To the extent there are any net rents, the Debtor will hold those funds to be

used to maintain the property pending further Order of the Court.

2.      Such use of the Cash Collateral is authorized on an interim basis until final

approval of the Motion is granted.  Any creditor or party in interest may object to the

provisions of this Order within fourteen (21) days of the mailing of the notice.  If any

timely objection is filed, the Court will hold a hearing on _____, 2014, at ____

a.m. in Courtroom ____, ____ Floor, United States Bankruptcy Court, 120 West Third

Street, Dayton, Ohio 45402, to consider the objection and to consider possible

modification of the provisions of the Order.  If no objection is timely filed, counsel for

the Debtor will file a report with the Court indicating that there have been no timely

objections.  At that time, the provisions of this Order will become final and the Debtor will be authorized to use Cash Collateral and to grant adequate protection as set forth herein on a continuing basis. Further, should no objections be filed, the Court will not hold the final hearing on this matter.

3.      The Debtor's use of the Cash Collateral during the interim period before the final approval of the Motion is approved for the purposes set out in paragraph 1, above, and as set forth in the cash flow projections attached to the Debtor's Motion.

4.      The Mawardis and Highgate will be allowed adequate protection related to the Cash Collateral and their respective Unperfected Security Interest on the following terms and conditions:

A.      The Debtor will maintain the property and, without waiving any right to contest the Security Interest of either the Mawardis or Highgate, will offer a replacement lien on the assets to each party to the full extent of the value, if any, of each party's respective Security Interest at the commencement of the case.

B.      The Debtor will provide the Mawardis and Highgate with a copy of all financial reports provided to the U.S. Trustee, the Bankruptcy Court or any other parties in interest.

C.      Through its continuous operation, the Debtor will preserve and maintain the value of the property, thereby adequately protecting the use of the cash collateral used herein.

5.      This Order will be effective until further Order of this Court.

6.      The provisions of this Order may be terminated upon any of the following events (the "Events of Default"):

A.      The Debtor uses cash collateral for expenditures not approved by the Order granting this Motion or otherwise approved by an Order of the Court; or

B.      The Debtor fails to provide the Mawardis or to Highgate with the financial information identified in this Motion; or

C.      An Order is entered by the Bankruptcy Court appointing a Chapter 11 Trustee or converting the Debtor's Chapter 11 case to a Chapter 7 case; or

D.      Upon entry of an Order by the Bankruptcy Court upon good cause shown; provided, however, that the relief provided to the Mawardis and to Highgate hereunder (including the continuation of any lien and related relief) will not be impaired or voided on account of such termination.

7.      If any of the Events of Default occur, the Mawardis and Highgate will provide written notice of the proposed termination of the provisions of this Order and the termination of the authority of the Debtor to use the Cash Collateral in the below manner ("Notice of Default"). The Debtor will be permitted to cure such default within ten (10) days of the mailing of the Notice of Default.

A.      The Notice of Default will be sent by U.S. Mail to the following parties:

Barrington Spring House, LLC          Office of the U.S. Trustee
C/O  Corla Young, Stat. Agent          170 North High Street, Suite 200
4346 Riverside Dr, Ste. D1               Columbus, OH 43215
Dayton, OH  45405

And any Chapter 11 or Chapter 7 trustee appointed by the Court

B.      The Notice of Default will be provided to the following parties by e-mail and by U.S. mail:

James A. Coutinho, Esq.                    Ronna Jackson, Esq.
Strip, Hoppers, Leithart, McGrath &        Office of the U.S. Trustee
Terlecky Co., LPA                          170 N. High Street, Suite 200
575 S. Third St.                           Columbus, OH 43215
Columbus, OH 43215                         E-mail: ronna.g.jackson@usdoj.gov
E-mail:  jac@columbuslawyer.net

  C. The Notice of Default must also be filed with the Bankruptcy Court through the Court's ECF filing system.

  9. Any interim use of the Cash Collateral by the Debtor during the interim period of this Order are authorized by the Court and will not be subject to adjustment, alteration or repayment based upon any objection that may be filed to the provisions of this Order.

  10. Neither the Mawardis nor Highgate is granted a security interest in any avoidance actions that may be pursued pursuant to 11 USC §§ 544, 547, 548, 549 or any other applicable statute or law or in the proceeds from any avoidance action.

  11. No claims of the Debtor against either the Mawardis or Highgate are waived.

  IT IS SO ORDERED.

SUBMITTED BY:


  /s/ James A. Coutinho
Myron N. Terlecky (0018628)
James A. Coutinho (0082430)
Strip Hoppers Leithart McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, OH 43215
T: (614) 228-6345     F: (614) 228-6369
mnt@columbuslawyer.net; jac@columbuslawyer.net
Proposed Attorney to the Debtor

Copies to Default List Plus Top 20 and Additional Parties:

Highgate Road Pty. Ltd., Attn: Kaye
P O Box 12900, A'Beckett Street
Melbourne
AUSTRALIA,

Rafael, Issac Keith and Limor Mawardi
c/o Joshua R. Kon, Esq.
18851 Northeast 29th Avenue, Ste. 1005
Miami, FL 33180

# # #

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 13, 2014, a true and accurate copy of the foregoing MOTION BY DEBTOR FOR AN ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL REGARDING THE UNPERFECTED SECURITY INTERESTS OF (A) RAFAEL, ISAAC KEITH AND LIMOR MAWARDI AND (B) HIGHGATE ROAD PTY, LTD.; (2) AUTHORIZING THE CONTINUING USE OF CASH COLLATERAL; AND (3) GRANTING ADEQUATE PROTECTION was served on the following registered ECF participants, **electronically** through the court's ECF system, at the email address registered with the Court:

·   Asst US Trustee (Day)
·   MaryAnne Wilsbacher

and by **ordinary U.S. Mail** addressed to the Debtor, the Office of the United States Trustee, the twenty largest unsecured creditors, secured creditors and those other parties set forth on the attached mailing matrix

 /s/ James A. Coutinho
James A. Coutinho (0082430)

9

Office of The United States Trustee
170 North High Street, Suite 200
Columbus, OH 43215

Barrington Spring House, LLC
4346 Riverside Drive, Suite D1
Dayton, OH 45405

A1 Tactical Protection Services
6127 James Way
Hilliard, OH 43026

Bladecutter's, Inc.
5440 N. Dixie Drive
Dayton, OH 45414

Extreme Performance Carpet Care LLC
513 Windsor Park Drive
Dayton, OH 45459

For Rent
P O Box 209066
Dallas, TX 75320

Geoffrey Edelsten
181 Exhibition Street
Melbourne, Victoria, 3000
AUSTRALIA

Highgate Road Pty. Ltd., Attn: Kaye
P O Box 12900, A'Beckett Street
Melbourne, 8006
AUSTRALIA

Isaac Mawardi
c/o Joshua R. Kon, Esq.
18851 Northeast 29th Avenue, Ste. 1005
Miami, FL 33180

Joanna Buchanan
4313-F2 Riverside Dr.
Dayton, OH 45405

Limor Mawardi
c/o Joshua R. Kon, Esq.
18851 Northeast 29th Avenue, Ste. 1005
Miami, FL 33180

Montgomery County Treasurer
Montgomery County Admin. Building
451 W. Third Street
Dayton, OH 45422-1475

Montgomery County Water
P O Box 742598
Cincinnati, OH 45274

Premium Assignment Corporation
P O Box 8000
Tallahassee, FL 32314

Rafael Mawardi
c/o Joshua R. Kon, Esq.
18851 Northeast 29th Avenue, Ste. 1005
Miami, FL 33180

RIM Painting
P O Box 77
Dayton, OH 45405

Rite Rug Company, Inc.
c/o Fifth Third Bank
P O Box 634478
Cincinnati, OH 45263

Ronald White
4351-N Springcreek Dr.
Dayton, OH 45405

Rumpke
P O Box 538710
Cincinnati, OH 45253

Russell Abernathy, Jr.
4346-A1 Riverside Dr.
Dayton, OH 45405

Siedha Buckley
4359-F Springcreek Dr.
Dayton, OH 45405

Stanford Latimore
4357-G2 Riverside Dr.
Dayton, OH 45405

Stericycle Communications Solutions
Central Database
26430 Network Pl.
Chicago, IL 60673

Van Martin Windows & Roofing
3046 E. River Road
Dayton, OH 45439

Vectren
Vectren Energy Delivery
P O Box 6262
Indianapolis, IN 46206

Wilmar
P O Box 404284
Atlanta, GA 30384